*74
 
 OPINION OF THE COURT
 

 Titone, J.
 

 Defendant was charged with attempted murder and related offenses in a felony complaint that was filed on August 2, 1989. More than 15 months later, defendant moved to dismiss the charges, arguing that the People’s October 26, 1990 statement of readiness came too late to satisfy their obligations under CPL 30.30. Inasmuch as a bench warrant for defendant had been issued and was outstanding during a substantial portion of the period between defendant’s arraignment and the People’s readiness declaration, the critical issue is the extent to which the People may rely on the exclusion provided in CPL 30.30 (4) (c) to excuse their protracted unreadiness. Resolution of that question, in turn, depends on whether the entire period between the issuance of a bench warrant for defendant’s arrest and the People’s readiness declaration is excludable even though a 69-day portion of that period elapsed before efforts to execute the warrant were initiated. Concluding that the police’s subsequent efforts to enforce the warrant do not insulate the People from judicial review of their prior inaction, we hold that the 69-day period of inaction is not excludable and that, in the absence of a cognizable explanation for other prereadiness delays, the indictment should have been dismissed.
 

 I
 

 Defendant, who was accused of wounding his landlord in a shooting incident, was arraigned on a felony complaint on August 2, 1989. He was released two days later when the prosecutor informed the court that no Grand Jury action had yet been taken against him
 
 (see,
 
 CPL 180.80). Defendant did not appear on the next scheduled adjourn date, and a bench
 
 *75
 
 warrant was issued for his arrest. Defendant was arrested on unrelated charges on October 16, 1989, at which time the existence of the outstanding bench warrant was discovered. Since the Grand Jury had still not acted on the charges arising from the shooting incident, the court once again released defendant on his own recognizance four days later
 
 (see, id.).
 

 Defendant was indicted for crimes associated with the assault on his landlord on December 8, 1989, but no Supreme Court arraignment was scheduled and no notice was sent to defendant or his attorney
 
 (see,
 
 CPL 210.10 [2]). An ex parte order for defendant’s arrest was issued on December 19, 1989. Defendant did not appear until October 5, 1990, when he was located and returned on the warrant. At that point, the People requested and were granted a short-term adjournment.
 
 [1]
 
 Their "readiness” declaration was made on the adjourn date, October 26, 1990.
 

 One month later, defendant moved to dismiss the indictment, alleging that the People were inexcusably "unready” for a total of "451 days,” far more than the 184 days that CPL 30.30 allowed them in these circumstances. According to the defense papers, a large segment of this period — i.e., the "289-day period” between the issuance of the second bench warrant (December 19, 1989) and defendant’s return on that warrant (October 5, 1990) — was not excludable under CPL 30.30 (4) (c) because the People had not exercised due diligence in locating defendant during that period. Defendant also argued that the People were accountable for an additional "162 days” of unexcused delay. Notably, although there were no errors in the relevant dates cited in defendant’s motion papers, defense counsel had miscalculated the number of days involved in the various identified periods. In fact, the period between the issuance of the bench warrant and defendant’s return was 290 days, the additional days of claimed unexcused delay totaled 192 and the full period that defendant identified as being chargeable to the People totaled 482 days. Inasmuch as the court had indicated that "the hearing will be the determining factor” and that a lengthy reply was unnecessary, the prosecutor submitted only a brief responsive affirmation, stating that "[a] review of the papers submitted establish that the defendant’s motion will depend on the efforts made by the
 
 *76
 
 Police Department in arresting the defendant on the various warrants.”
 

 At the hearing, the People called Police Officer Elliot Rice, who had been assigned the responsibility of executing the December 19, 1989 warrant on February 26, 1990. Rice immediately made inquiries about defendant with the Correction Department. In April 1990, he made an unsuccessful attempt to locate defendant at the address on the warrant. Over the succeeding few months, Rice made an inquiry at the Post Office, contacted the Correction Department again, checked with the Department of Motor Vehicles, visited a second address listed on defendant’s rap sheet and revisited defendant’s former landlady, the complainant’s wife. Finally, on October 4, 1990, defendant was located and arrested after his former landlady spotted him in the neighborhood and notified Rice.
 

 During the oral argument following the hearing, defense counsel argued that although some efforts were made to locate defendant after February 26, 1990, there was no showing of any similar efforts between that date and December 19, 1989, the date the warrant was issued. Consequently, defense counsel contended, that period was not excludable under CPL 30.30 (4) (c). And, when that period was added to other identified periods of unexcused delay, the statutorily authorized time for the People to become ready had been exceeded.
 

 The People responded by arguing that Officer Rice had made "all reasonable * * * effort” to execute the warrant and that "the People are [not] under any obligation to pursue every potential avenue.” With respect to "the other aspect of defendant’s motion,” the prosecutor argued that a "substantial amount of th[e] time [before indictment] is excludable [if, in fact, defendant had put in a notice that he wished to testify before the Grand Jury].” Additionally, the prosecutor stated, "[t]he People have a reasonable time to arraign that would be excludable.”
 

 On the basis of the argument and evidence presented at the hearing, the trial court ruled that the People had demonstrated over-all diligence, notwithstanding that two months had elapsed before their efforts to enforce the December 19, 1989 warrant began. Consequently, defendant’s CPL 30.30 motion for dismissal was denied, and the matter proceeded to trial. Defendant was ultimately convicted of one count of first degree assault and one count of second degree criminal posses
 
 *77
 
 sion of a weapon. The judgment of conviction was subsequently affirmed by the Appellate Division, which enumerated Officer Rice’s efforts and found that they amounted to the requisite diligence. This appeal, taken by permission of a Judge of this Court, ensued.
 

 II
 

 Defendant’s appeal presents yet another variant on the question of the People’s CPL 30.30 obligation to ready their case during the absence or unavailability of the accused. The focus of the inquiry is CPL 30.30 (4) (c), which excludes from the calculation of the People’s readiness time "the period extending from the day the court issues a bench warrant pursuant to [CPL] 530.70 because of the defendant’s failure to appear in court when required, to the day the defendant subsequently appears in the court”. A condition precedent to the use of this provision is a showing that "the defendant [wa]s absent or unavailable and has either escaped from custody or has previously been released on bail or on his own recognizance” (CPL 30.30 [4] [c]). Under the statute, "[a] defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence”
 
 (id.).
 
 A defendant is "unavailable” "whenever his location is known but his presence for trial cannot be obtained by due diligence”
 
 (id.).
 

 Defendant’s first argument on this appeal is that the above-quoted provision, which was adopted to mitigate the effects of this Court’s decision in
 
 People v Sturgis
 
 (38 NY2d 625;
 
 see, People v Bolden,
 
 81 NY2d 146, 152; Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 30.30, at 171-172), is inapplicable to his case. As defendant points out, he was never notified of his indictment or of a scheduled arraignment date. Accordingly, defendant argues, the December 19, 1989 bench warrant was not one that was issued "because of the defendant’s failure to appear in court
 
 when required,”
 
 and the specific language of CPL 30.30 (4) (c) that was aimed at cases involving certain absconders is unavailable
 
 (cf., People v Bolden, supra,
 
 at 153, n 3).
 

 Whether or not defendant’s argument has merit, it was not raised in the trial court and therefore cannot be considered here. While the defense may satisfy its initial burden under CPL 30.30 by alleging only that the prosecution failed
 
 *78
 
 to declare readiness within the statutorily prescribed time period
 
 (see, e.g., People v Cortes,
 
 80 NY2d, at 201;
 
 People v Santos,
 
 68 NY2d 859;
 
 People v Berkowitz,
 
 50 NY2d 333), that principle concerns the substantive burden of proof and does not alter the basic rules of preservation, which determine what questions are reviewable in this Court
 
 (see,
 
 CPL 470.05 [2]). Those rules require, at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error. In the CPL 30.30 context, the People must ordinarily identify the exclusions on which they intend to rely, and the defense must identify any legal or factual impediments to the use of these exclusions. Where, as here, the defense anticipates the People’s reliance on a particular exclusion and makes specific arguments about its availability, it cannot subsequently change course and make an entirely different argument on appeal about the same exclusion.
 

 III
 

 Turning to the argument that defense counsel did make before the trial court, we conclude that, as defendant contended, at least some of the period during which the December 19, 1989 bench warrant was outstanding is not excludable under CPL 30.30 (4) (c). As we have recently held, a showing of diligent efforts to execute the bench warrant referred to in the statute is a prerequisite to the application of the statutory exclusion
 
 (People v Bolden,
 
 81 NY2d 146,
 
 supra).
 
 While the question whether the People have exercised diligence in locating an individual is a mixed question of law and fact
 
 (see generally, People v Ayala,
 
 75 NY2d 422, 428;
 
 People v Arroyo,
 
 54 NY2d 567, 573-574,
 
 cert denied
 
 456 US 979;
 
 People v Maneiro,
 
 49 NY2d 769, 770;
 
 People v Budd,
 
 46 NY2d 930), this Court may nevertheless inquire into whether the fact finder’s conclusions are supported by the record
 
 (see, People v Bolden, supra,
 
 at 155;
 
 see generally, People v Harrison,
 
 57 NY2d 470, 477-478).
 

 In this case, both courts below found that the People had exercised the requisite diligence, but, with respect to the period between December 19, 1989 and February 26, 1990, that finding was not supported by any evidence on the record.
 
 *79
 
 Although the People’s only witness, Officer Rice, was able to describe the police’s efforts to locate defendant after the warrant was assigned to him on February 26th, he knew nothing of the efforts, if any, that were made before that date. Thus, no showing at all of diligence was made.
 

 We reject the People’s suggestion that we should excuse the period of preassignment delay in recognition of the need to "process” bench warrants after they have been issued by Judges. In effect, the People are asking us to adopt a blanket exception for "reasonable administrative delay.” We conclude, however, that the adoption of such an exception is inappropriate, since the "due diligence” standard that is mandated by the statute is flexible enough to permit consideration of processing demands where warranted by the demonstrated facts. Our holding is not that time spent processing a warrant is always chargeable to the People but simply that, as a matter of law, there were no facts here from which a court could infer the requisite diligence, administrative or otherwise.
 
 [2]
 

 Contrary to the People’s contention, we are not prevented from considering their lack of diligence during the period from December 19, 1989 to February 26, 1990 because of the lower courts’ finding that the People acted diligently overall in their efforts to enforce the warrant. Nor does our holding mandate an unwarranted "[d]issection” of the prearrest period or otherwise increase the burden of law enforcement (dissenting opn, at 89). Speedy trial analysis has always taken discrete, logical time periods and determined whether, for some unifying reason, a particular period is or is not includable in the speedy trial time. Indeed, CPL 30.30 (4) (c) excludes only those specific "periods” when the authorities have acted with due diligence in attempting to locate or apprehend the defendant
 
 (People v Bolden, supra,
 
 at 150, 151-
 
 *80
 
 152).
 
 [3]
 
 Thus, the statutory language itself mandates consideration of the excludability of discrete, legally relevant blocks of time within the total period of the People’s unreadiness. While it may often be difficult or impractical to divide the period of warrant enforcement into segments for purposes of analysis under CPL 30.30 (4) (c), no such difficulty is present in this case, where a clear line can be drawn between the period before and the period after the warrant was assigned to a police officer and the efforts to enforce it began
 
 (see, People v Fuggazzatto,
 
 62 NY2d 862).
 

 Additionally, it is no answer to suggest that the blame should be shifted to the defendant because of his failure to return to court. Defendant was released on October 20, 1989, before any indictment had been issued. Even after the indictment was filed on December 8, 1989, defendant was not given notice of a date that he should appear in court for arraignment.
 

 For the foregoing reasons, we conclude that, as a matter of law, the 69 days of delay between the date the warrant was issued and the date that it was assigned for enforcement are not excludable under the
 
 Sturgis
 
 amendment to CPL 30.30 (4) (c). Contrary to the dissent’s suggestion, in the area of bench warrants, law enforcement officials are not privileged to adopt policies of "not churning their available law enforcement resources in chasing after the throngs of fugitives from justice” (dissenting opn, at 87). Those officials are bound by their oaths of office to make all reasonable efforts to enforce judicially issued warrants
 
 (see, People v Bolden, supra,
 
 at 154-155).
 
 [4]
 
 Additionally, this Court is not privileged to defer to law enforcement’s resource-allocation choices; rather, it is duty-
 
 *81
 
 bound to determine whether the law enforcement arm of government has acted in compliance with CPL 30.30’s "due diligence” command. Notably, contrary to the dissent’s suggestion (dissenting opn, at 87), the People are chargeable with all unready time unless they can establish a statutorily recognized exclusion
 
 (e.g., People v Cortes, supra),
 
 and, in the case of exclusions claimed under CPL 30.30 (4) (c), the People must establish
 
 as co-equal elements
 
 both that the defendant was missing and that they exercised diligence.
 
 [5]
 

 IV.
 

 When the 69-day period of delay between the date the court issued the warrant and the date it was assigned for enforcement is added to the other unexcused periods of prereadiness delay, the total period of the People’s unexcused unreadiness exceeds the six months permitted by the statute. Defendant’s motion papers placed in issue the entire period of delay before the People’s readiness declaration, including the 43 days between defendant’s arraignment (August 2, 1989) and his first failure to appear (September 14, 1989), the 85 days between that date and the filing of the indictment (December 8, 1989), the 11 days between the filing of the indictment and the issuance of the second bench warrant (December 19, 1989) and the 21 days between defendant’s return on the warrant (October 5, 1990) and the People’s readiness declaration (October 26, 1990) (a total of 160 days). Under well-established principles, the People had the burden of showing their entitlement to a statutory exclusion for some, if not all, of these periods
 
 (see, People v Cortes, supra,
 
 at 213;
 
 People v Santos, supra; People v Berkowitz, supra).
 
 Inasmuch as the People failed to offer any basis for excluding these periods, the 160 days they encompass must be added to the 69 days of unex
 
 *82
 
 cused unreadiness that elapsed between December 19, 1989 and February 26, 1990, resulting in a total unexcused delay that substantially exceeds what is permitted by CPL 30.30
 
 (see, People v Cortes, supra; People v Santos, supra,).
 

 We reject the People’s contention that defendant’s claims with regard to these additional 160 days were "unpreserved” and therefore cannot form the basis for an appellate dismissal under CPL 30.30. Although she had no burden to do so, defense counsel specifically referred to these periods in her detailed motion papers. Thus, there can be no doubt that the defense raised a "question of law” with regard to the People’s unreadiness during those periods. Moreover, since the People did not raise an issue with regard to these periods during the CPL 30.30 hearing, defense counsel’s failure to mention all of them during that hearing cannot be regarded as a waiver or an abandonment of the underlying issues.
 

 We also reject the People’s argument that they should be afforded a second chance to litigate the excludability of these additional periods because the trial court’s statements and the arithmetic errors in defense counsel’s papers lulled them into believing that their excludability was not outcome determinative. The People’s reliance on defense counsel’s erroneous computation was unjustified, since the periods of delay in question were clearly and correctly identified in counsel’s motion papers and there was nothing to prevent the prosecutor from making his own calculations and drawing his own conclusions about the number of days of claimed delay that were at stake.
 

 Nor do the trial court’s statements furnish a justification for the People’s failure to explain or excuse the People’s unreadiness during the prewarrant and postreturn periods identified in defendant’s motion papers. The People now claim that before the hearing on defendant’s CPL 30.30 motion began, the trial court "narrowed the issues * * * to the single question of whether the * * * period from December 19, 1989 to October 5, 1990 should be charged to the People,” but the claim is simply not supported by the record. The trial court merely told the prosecutor that he need not submit detailed response papers because "the hearing will be the determining factor.” Thus, insofar as the record reveals, it was the prosecutor who "narrowed” the scope of the inquiry, first by submitting an affirmation stating his view that resolution of the motion would depend on the police’s diligence "in arresting
 
 *83
 
 the defendant on the various warrants,” and thereafter by limiting his hearing proof to the efforts the police made to locate defendant following the issuance of the December 19, 1989 warrant.
 
 [6]
 

 Hence, there was no judicial "error of law which functionally deprive[d] the People of their * * * opportunity to put in their case” or otherwise caused them to limit their proof to the period of defendant’s second absence
 
 (People v Giles,
 
 73 NY2d 666, 671;
 
 see, People v Crandall,
 
 69 NY2d 459, 464-465;
 
 see also, People v Alls,
 
 83 NY2d 94, 102). Indeed, the record does not even demonstrate the existence of an informal understanding that might have led the prosecutor to believe that he could safely limit his proof. Moreover, any prosecutorial assumption that the outcome would necessarily rest on the excludability of the period from December 19, 1989 to October 5, 1990 as a whole would have to have been dispelled when defense counsel specifically argued during the hearing that even if some of that period were excludable, the segment of time between the issuance of the warrant and its assignment to Officer Rice for enforcement was not. This argument, coupled with defense counsel’s additional hearing argument concerning delays during two other discrete periods, was certainly sufficient to place the prosecutor on notice that the excludability of delays outside the December 19, 1989 to October 5, 1990 period could become important — or even dispositive — in resolving defendant’s entitlement to a CPL 30.30 dismissal.
 

 Since defense counsel’s oral and written arguments gave adequate warning that defendant’s position did not rise or fall with the disposition of that period as a whole, it was incumbent upon the prosecutor to offer some more specific and fact-based explanation for the other delays than that "[t]he People have a reasonable time to arraign”
 
 (but see, People v Cortes,
 
 80 NY2d, at 213,
 
 supra; People v Correa,
 
 77 NY2d 930) and that a "substantial amount” of the time before indictment might be excludable if, in fact, defendant had requested to testify before the Grand Jury. In this regard, it is worth repeating that the excludability of any period of prereadiness delay is a question on which the prosecution has the burden of proof
 
 (e.g., People v Santos, supra; People v Berkowitz, supra).
 

 
 *84
 
 V.
 

 Because of the People’s failure to establish the excludability of at least 160 days outside of the December 19, 1989-to-October 5, 1990 period and because of their failure to prove that they exercised due diligence during the 69 days that elapsed between the December 19, 1989 issuance of the bench warrant and the date that the warrant was assigned for enforcement, there exists a total of more than 184 days of unexcused prereadiness delay. Consequently, the People did not satisfy their statutory readiness obligation and the motion to dismiss the indictment under CPL 30.30 should have been granted.
 

 Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed.
 

 Bellacosa, J. (dissenting). We respectfully dissent and vote to affirm defendant’s conviction of assault in the first degree and criminal possession of a weapon in the second degree. The essential question in this case turns on the trial court’s mixed law and fact determination that is affirmed by the Appellate Division. Since the majority bypasses that procedural obstacle, which would compel affirmance in this Court, and reaches the merits of this CPL 30.30 (4) (c) issue, we disagree with its imposition of a confusing and extraordinary "undue” diligence gloss on the statute.
 

 I.
 

 The merits issue on this appeal is whether the People satisfied the "due diligence” exception under CPL 30.30 (4) (c) with respect to their readiness to proceed to trial against a fugitive defendant. Due diligence, by its nature and function, is an elastic concept, best determined judicially on a record-by-record evidentiary weighing. That elasticity and appropriate respect for the fact-finding distribution of judicial authority are displaced by the holding of this case. Instead, fractionalized time line and time interval appraisals are mandated as a matter of law from this final judicial review perch
 
 (compare, People v Taranovich,
 
 37 NY2d 442, 445). The new mandate lacks jurisprudential realism or justification.
 

 Reversal of this conviction and outright dismissal of the serious criminal charges, in our view, are unwarranted because:
 

 (1) the People satisfied their statutory duty and burden;
 

 
 *85
 
 (2) this counter-intuitive result finds no precedential support;
 

 (3) the language and legislative history of CPL 30.30 do not support the strained statutory construction
 
 (see, People v White,
 
 73 NY2d 468,
 
 cert denied
 
 493 US 859);
 

 (4) this result ”breed[s] contempt” for law and the judicial process generally and especially among defendants who receive a bonanza for negligent or intentional failure to return to court (Mem of State Exec Dept, 1972 McKinney’s Session Laws of NY, at 3259;
 
 see also, Matter of Jose R.,
 
 83 NY2d 388); and
 

 (5) the rationale imposes undue burdens on the People and the trial courts.
 

 II.
 

 On August 2, 1989, defendant was arrested and arraigned upon a felony complaint charging him with attempted murder. Defendant shot his .38 caliber revolver through his apartment door when his landlord presented himself to collect the rent. The landlord was seriously injured. Defendant was released two days later on his own recognizance, with his understanding reflected to the trial court that he should be present on September 14, 1989
 
 (see,
 
 Temporary Order of Protection in favor of assault victim against defendant, signed by defendant). Defendant failed to appear, and the court issued a warrant for his arrest. On October 16, 1989, defendant was arrested and arraigned on a new offense and remained in custody until October 20, at which time the court again released him on $25,000 bail. On December 8, 1989, the Grand Jury indicted defendant, and on December 19, 1989, another arrest warrant was issued to secure his presence in court to answer the criminal charges. Approximately 10 months passed before defendant was again involuntarily returned to court on the warrant.
 

 At the due diligence hearing, Police Officer Elliot Rice, an officer with over 16 years experience and member of the Kings County Warrant Squad, testified that he was assigned defendant’s warrant on February 26, 1990, at which time he requested photos of the defendant. At the time Officer Rice received defendant’s warrant, he had as many as 60 other warrants to execute. On March 1, he requested the Department of Correction to check whether defendant was incarcer
 
 *86
 
 ated on any unrelated charge. After receiving a negative response, Officer Rice continued his search by visiting defendant’s address listed on the warrant. On June 8, he visited a different address listed on defendant’s rap sheet, but was informed that defendant did not reside at that location. Also, Officer Rice did a postal check and ran a search with the Department of Motor Vehicles. On July 12, 1990, Officer Rice again checked with the Department of Correction but received another negative response. Finally, on October 4, 1990, defendant was captured after defendant’s former landlady, the assault victim’s spouse, spotted defendant back in the neighborhood and reported that to Officer Rice.
 

 At the conclusion of the due diligence hearing, the trial court denied defendant’s CPL 30.30 motion, holding that the efforts made by the Warrant Squad were sufficient to meet the due diligence standard. In making this finding, the court stated correctly that "[i]t is not required that the police make attempts every week or every month; or that all possible avenues are exhausted. What is required and what the standard is [is] a reasonable attempt to locate the defendant and it is this Court’s finding[ ] that the People have met that burden.”
 

 The Appellate Division stated in affirming:
 

 "Contrary to the defendant’s contentions, he was not deprived of his right to a speedy trial * * *. Although approximately 14-Mi months elapsed between commencement of this criminal action * * *, and the People’s announcement of readiness for trial, this delay was directly attributable to the defendant’s absence * * *. We conclude that the People satisfied their obligation to attempt to determine the defendant’s location through the exercise of due diligence” (194 AD2d 807, 807-808 [citations omitted]).
 

 Despite the undisturbed and mixed findings of law and fact made by the courts below, this Court now carves 69 days out of the due diligence determination of those courts. The lower courts’ decisions appropriately considered and covered the whole period of defendant’s absence. This Court declares that the 69-day extrapolation effects a violation of CPL 30.30 as a matter of law.
 

 III.
 

 CPL 30.30 is not a
 
 speedy trial
 
 statute. It is a prosecution
 
 *87
 

 ready
 
 rule
 
 (see,
 
 Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 30.30 [Historical Background], at 167-168, 172;
 
 see also, People v Anderson,
 
 66 NY2d 529, 535). Section 30.30 (4) (c) states in pertinent part:
 

 "In computing the time within which the people must be ready for trial pursuant to subdivisions one and two,
 
 the following periods must he excluded:
 
 * * *
 

 "(c)
 
 the period of delay resulting from the absence or unavailability of the defendant
 
 or, where the defendant is absent or unavailable and has either escaped from custody or has previously been released on bail or on his own recognizance, the period extending from the day the court issues a bench warrant pursuant to section 530.70 because of the defendant’s failure to appear in court when required, to the day the defendant subsequently appears in the court pursuant to a bench warrant or voluntarily or otherwise. A defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution,
 
 or his location cannot be determined by due diligence”
 
 (CPL 30.30 [4] [c] [emphasis added]).
 

 Thus, any period of readiness delay resulting from defendant’s absence must be excluded from the time chargeable to the People. That is the major premise of the statute itself. Absented time is chargeable to the People only if the People do not employ due diligence to locate a defendant (CPL 30.30 [4] [c]), or if they adopt a uniform policy of not churning their available law enforcement resources in chasing after the throngs of fugitives from justice
 
 (see, People v Leone,
 
 65 NY2d 674, 675;
 
 People v Bratton,
 
 65 NY2d 675, 677).
 
 [1]
 

 Defendant, nevertheless, argues that, as a matter of law, the prosecution cannot benefit from the plain, threshold statutory exclusion of time if some chunk or aggregated portion of his absence can be isolated from the People’s over-all due diligence effort to relocate and recapture him. Defendant’s exclu
 
 *88
 
 sive support for this bold proposition, not found in the statute itself, is his perfunctory assertion that generalized law enforcement inaction might otherwise be encouraged. This argument suffers from numerous flaws. First, there is no statutory, legislative or precedential authority to support such a counter-intuitive flip of the due diligence prong of CPL 30.30 (4). Also, the argument resonates with a policy choice that belongs to the Legislature, not the courts. This case, after all, involves pure statutory construction, not common-law or constitutional adjudication, with respect to which courts have a significantly greater substantive role and responsibility.
 

 Statutes should be construed according to the ordinary meaning of their words
 
 (see, People v White,
 
 73 NY2d 468, 473,
 
 cert denied
 
 493 US 859,
 
 supra).
 
 We have recently and unanimously emphasized in analogous circumstances that "Application of this cardinal rule * * * is not to be mechanically applied when an absurd or futile result would ensue, especially one at variance with the policy and purpose of the legislation”
 
 (Matter of Jose R.,
 
 83 NY2d 388, 393,
 
 supra).
 
 Accordingly, the controlling guidance in interpreting statutes is the legislative intent, expression, purpose and history
 
 (People v White, supra,
 
 at 473;
 
 see also, People v Anderson,
 
 66 NY2d 529, 535,
 
 supra).
 

 Undeniably, section 30.30 was enacted to encourage prompt attention and resolution of criminal charges. Indeed, upon signing this measure into law, the Governor stated that this law "will provide a strong inducement for more rapid disposition of criminal cases in a manner consistent with available resources and the need to avoid creating additional danger to public safety” (Governor’s Approval Mem, 1972 McKinney’s Session Laws of NY, at 3385). As to delays caused by defendants, the statute flatly recognizes that defendants are individually responsible for the time of their own absences from court when their whereabouts cannot be determined with due diligence by law enforcement authorities
 
 (see,
 
 CPL 30.30 [4] [c]). This Court has even acknowledged that the 1984 amendment to CPL 30.30 was designed to "lessen” the People’s burdens in defendant "absence or unavailability” circumstances
 
 (People v Bolden,
 
 81 NY2d 146, 153, 158).
 

 The determinative question, therefore, is not when the due diligence effort to locate and retrieve a fugitive defendant commences. At its most elemental level in these absent defendant situations, this case reduces to what is "diligence”, what
 
 *89
 
 is “due,” and when. This case is not just another “variant” (majority opn, at 77) of defendant unavailability, nor a mere burden of persuasion matter, nor simply about something called an ”[i]n effect” “reasonable administrative delay” exception (majority opn, at 79). Rather, the dispositive consideration is whether courts should examine the entire spectrum of efforts the People deploy to satisfy the flexible statutory concept of due diligence over the full span of a defendant’s unauthorized “holiday” from court in avoidance of answering criminal charges. That is precisely what both lower courts did. The majority scuttles that approach and substitutes a new judicial exercise and review, despite its disclaimer to the contrary. Dissection into discrete, daily, due diligence accounting periods and time intervals to determine when and to what extent the People satisfied the general statutory “due diligence” requirement is the inevitable consequence of today’s ruling.
 

 Without question, the practical consequence of this new rule is a command to overburdened and conscientious law enforcement personnel that they henceforth keep pursuing and rearresting hosts of defendants continuously during pretrial release periods, no matter how many times courts set them free pending trial. Segmentation and aggregation of days and time frames are logically and inexorably the kinds of calculations that will have to be done from now on in judicial assessments of due diligence at every level. The new rubrics create a functionally impossible accounting and accountability burden in these multitudinous fugitive-from-justice scenarios that will result in uneven applications. Moreover, it is placed on the wrong parties and enables and facilitates accuseds to evade personal responsibility from answering for their criminal misdeeds
 
 (compare for practical consequences, People v Antommarchi,
 
 80 NY2d 247,
 
 rearg denied
 
 81 NY2d 759).
 

 We emphasize that we would not diminish one iota the People’s accountability for their “readiness” and “due diligence” in accordance with the statute’s explicit commands. Correspondingly, however, released accuseds should be accountable for the
 
 sine qua non
 
 of their pretrial release— returning to court as the law requires. Without question, defendant knew of his responsibility to return to court by the express terms of the order of protection which he signed. Also, he cannot feign blissful ignorance of the fact of the unresolved felony complaint, which he knew all about and for which he kept getting arrested. Accordingly, there is no basis to excuse
 
 *90
 
 his absence on some lack of follow-up notice, as though the criminal charges had evaporated merely because of his release. No reasonable person and no reasonable rule of law or burden of proof should tolerate and condone such coy escapism.
 

 By accepting defendant’s due diligence gloss on CPL 30.30, the majority erases any day of reckoning for these serious criminal charges. The emergence of this latest statutory twist that imposes continuous daily investigations into the whereabouts of every released missing defendant, as the pinpointed measurements of due diligence, will surprise the enactors and amendors of CPL 30.30 and delight the beneficiaries of this interpretative largesse
 
 (compare, People v White,
 
 73 NY2d 468,
 
 cert denied
 
 493 US 859,
 
 supra).
 

 The majority purports to limit the sweep of its holding by stating that "[wjhile it may often be difficult or impractical to divide the period of warrant enforcement into segments for purposes of analysis under CPL 30.30 (4) (c), no such difficulty is present in this case, where a clear line can be drawn between the period before and the period after the warrant was assigned to a police officer and the efforts to enforce it began” (majority opn, at 80). That line drawing is pure fact-finding analysis and creates a maze of a rule for future application in every level of the court system. Moreover, two illustrations using the very facts of this case demonstrate, additionally, the transparency of the purported limitation which is reflected repeatedly in fact-differentiated terms and analysis (majority opn, at 78, 79-80).
 

 Warrant Officer Rice attempted to locate defendant on only the following dates: February 26, March 1, April 11, May 16, May 30, June 8, June 21 and July 12, 1990. Thus, courts can isolate the following periods which represent blocks of time when law enforcement was not actively pursuing defendant: February 27 — February 28; March 2 — April 10; April 12 — May 15; May 17 — May 29; June 1 — June 7; June 9 — June 20; June 22 — July 11; and July 13 — October 4, 1990. Since there is no "evidence on the record” that the police "exercised the requisite diligence” (majority opn, at 78) during these time periods, and it is not "difficult” or "impractical” to segment these time periods, under the majority’s precedential reasoning, these periods, when challenged by defendants, must also be charged against the People. Second, if a Warrant Officer did some preliminary, timely, locating activity upon issuance of the warrant and then allowed a 69-day hiatus to occur to chase
 
 *91
 
 other fugitives, that interim block of time would fall on the People’s nondue diligence ledger — unless a tolling concept is also going to be added to the fractionalized due diligence concept. These are mere samples of the real world impacts of today’s precedent — a day-by-day due diligence "sword of Damocles” in every case.
 

 IV.
 

 The stated purpose of CPL 30.30 was to better utilize judicial resources to "attack * * * case backlogs” (Mem of State Exec Dept, 1972 McKinney’s Session Laws of NY, at 3259, 3260), to "provide a strong inducement for more rapid disposition of criminal cases in a manner consistent with available resources,” (Governor’s Approval Mem,
 
 op. cit.,
 
 at 3385) and "[t]o promote prompt trials for defendants” (Mem of State Exec Dept,
 
 op. cit,
 
 at 3259). The legislative exertion was designed to improve the "system” of justice and to reduce danger to the public safety. Correspondingly, "[t]he public, defendants and the victims of crimes all have a strong interest in the prompt trial of criminal cases. The knowledge that punishment for the guilty will be swift and sure acts as an effective deterrent to crime” (Mem of State Exec Dept,
 
 op. cit.,
 
 at 3259). Today’s ruling recalibrates the "ready” policy variables and "breed[s] contempt for the law and convince^] criminals that they can 'beat the system’ ”
 
 (id.).
 
 Despite the Court’s recent expression in
 
 People v Bolden
 
 (81 NY2d 146, 151,
 
 supra)
 
 that this statute was "precisely worded” and drafted with "precision”, the majority now
 
 sua sponte
 
 adds substantive gloss and splinters the due diligence formula of this statute.
 

 Mixed precedential signals also emerge in relation to this Court’s recent unanimous holding in
 
 Matter of Jose R.
 
 (83 NY2d 388,
 
 supra).
 
 In
 
 Jose R.,
 
 a juvenile absconded following a delinquency adjudication and was returned to Family Court 14 months later. A motion to dismiss was made on the basis of denial of the right to a timely dispositional hearing. While the Court acknowledged the hurdle of the literal language of Family Court Act § 350.1, it concluded that the juvenile’s disobedience in failing to return to Family Court precluded dismissal of the charges. As with
 
 Jose R.,
 
 the Court here should statutorily interpret this statute within the framework of the intent and policy behind CPL 30.30 and especially under subdivision (4) (c).
 

 
 *92
 
 The due diligence component was not imposed on the People to be wielded as a sword by defendants who were granted the benefit of pretrial release, only to have them turn around and evade trial long enough to assert that their evasion morphs into dismissal of the criminal charges
 
 (compare, Matter of Randy K..
 
 77 NY2d 398, 407 [dissenting opinion by then-Judge Kaye]). By avoiding their day in court, defendants achieve a twin bonanza — they escape prompt trial, the essential goal of CPL 30.30, and they are granted dismissal of the criminal charges to boot. Defendants have no incentive to show up for a day of reckoning and every incentive to stonewall and lay low for however long it takes to secure improbable dismissals for their finesse or effrontery.
 

 Since the erratic arithmetic calculations of this rule have nothing to do with guilt or innocence or individualized or idealized justice, we suggest that prosecutors and Trial Judges should experiment with two procedural counterploys to try to offset the widespread adverse consequences of today’s ruling: (1) give
 
 Parker
 
 warnings
 
 (People v Parker,
 
 57 NY2d 136) and try defendants in absentia, so that when they are recaptured they can be immediately sent to State prison instead of through another round of local, pretrial rituals; or (2) remand many more accuseds to custody pending trial to insure presence for prompt, CPL 30.30-ready, satisfied trials or pleas.
 

 The risk of failing to keep meticulous account books and logs is dismissals with prejudice of criminal charges, without reference to their merit. Courts, too, will be relegated to examining spreadsheets (see attached illustrative graphic for this case, at 95). To arm defendants with this potent ultimate weapon that will allow them to thwart the People’s efforts to be ready to dispose of the merits of criminal charges contradicts the sound and fair administration of justice. It could not possibly have been the contemplated legislative intent. Of course, the Legislature could reassert itself again to amend section 30.30, as it tried to do in 1982 and 1984 in its effort to overturn earlier untoward rulings of this Court under this same statute
 
 (see, People v Sturgis,
 
 38 NY2d 625; L 1984, ch 670; Governor’s Approval Mem, 1984 McKinney’s Session Laws of NY, at 3628 [the purpose of amending CPL 30.30 (4) (c) was "to correct (the) problem created by the * * * decision in
 
 People
 
 v.
 
 Sturgis”]).
 

 V.
 

 To comply with the fractionalized test of "due diligence” under CPL 30.30, prosecutors must remain customarily vigi
 
 *93
 
 lant, keep accurate time logs, and announce in court that they are "ready” to proceed. They will also have to anticipate every conceivable shift in theory and argument at every level of court and engage in minute mathematical computations, projections and aggregations. To avoid being legally trumped by defendants using street-smart strategies in subsequent courts, the People will even have to challenge and press against the efforts of trial courts trying to limit and focus issues to those that are then relevant to varied ready-for-trial calculations.
 
 [2]
 

 Finally, this case is not about common-law interstitial development, a unique provenance of the Judicial Branch. It is pure statutory construction, which means the Judicial Branch is obligated to explore and execute the intent and will of the Legislative and Executive Branches in enacting law. The Judiciary’s policy preferences and choices are inappropriate and irrelevant. The articulated rationale of this case blinks the limitations in the distribution of governmental power, and the purported sufficiency articulation masks the substantive standard of law and
 
 ratio decidendi
 
 against which all future cases in this large inventory will be gouged. This case, in the end, turns exclusively on nonconstitutional, nonmerits, readiness time oscillations, variable by their very nature and ordinary case management tracking systems. The CPL 30.30 time requirements have not been shortchanged in this case, as a matter of fact or law, and under no view of this case is a reversal of a violent felony conviction rendered by a jury and affirmed by two prior courts warranted. Unlike the majority, we do not accept that some inexorable, abstracted sense of the law is responsible for defendant’s victory of form over substance (majority opn, at 81, n 5). Rather, judicial interpretative gloss grants the prize.
 

 Almost 70 years ago, then-Judge Cardozo expressed trouble
 
 *94
 
 ment that criminals should go free "because the constable has blundered”
 
 (People v Defore,
 
 242 NY 13, 21,
 
 cert denied
 
 270 US 657). The tremendous impact and acceptance of the exclusionary rule laid that adage to rest as quaint and somehow out of tune with modern American jurisprudence. The instant case, however, is not about the exclusionary rule or about ultimate issues of guilt or innocence. Thus, the Cardozean discomfort, instinct with its sagacity in relation to a case of this kind, should be revitalized and fitted to this kind of case. Criminals should not go free because Constables are out-waited and out-witted by low-lying accuseds.
 

 Chief Judge Kaye and Judges Simons, Smith and Ciparick concur with Judge Titone; Judge Bellacosa dissents and votes to affirm in a separate opinion in which Judge Levine concurs.
 

 Order reversed, etc.
 

 
 *95
 
 [[Image here]]
 

 [1]
 

 . Defense counsel did not consent to this request
 
 (see, People v Cortes,
 
 80 NY2d 201, 216;
 
 People v Liotta,
 
 79 NY2d 841, 843).
 

 [2]
 

 . The description in
 
 People v Lewis
 
 (150 Misc 2d 886) of warrant-processing methods in the New York City Criminal Courts, upon which the People heavily rely, is no substitute for a showing
 
 on the record
 
 of the steps that were taken in connection with defendant’s warrant. Additionally, because of the record’s silence on the point, we do not consider whether the People’s burden of establishing due diligence may be satisfied by proof of the existence of local processing procedures that are calculated to expedite warrant enforcement
 
 (see, People v Lewis, supra; cf., People v Bratton,
 
 65 NY2d 675,
 
 affg
 
 103 AD2d 368). Notably, the opinion in
 
 Lewis
 
 indicates that a lag time of at least "two to three weeks” is normally expected before a precinct warrant officer actually receives the warrant for assignment
 
 (id.,
 
 at 890). That delay is a far cry from the 69 days of unexplained delay that occurred in the present case.
 

 [3]
 

 . Of course, diligence is not required under CPL 30.30 (4) (c) when the defendant is to be deemed "absent” because "his location is unknown and he is attempting to avoid apprehension or prosecution” — a claim not made by the People here.
 

 [4]
 

 . The dissent misunderstands the holdings in
 
 People v Leone
 
 (65 NY2d 674, 675) and
 
 People v Bratton
 
 (65 NY2d 675, 676,
 
 supra).
 
 In those cases, the Court held that the People could adopt a policy of postponing indictments of absent defendants as a means of conserving scarce prosecutorial resources without running afoul of CPL 30.30’s readiness deadlines. In neither case was it suggested that the police may choose to conserve their law enforcement resources by postponing enforcement of bench warrants or selecting which warrants will be pursued "diligently.” Indeed, in both cases, the Appellate Division opinion adopted by this Court was careful to note that the threshold requirement of police diligence in attempting to locate the defendant had been satisfied
 
 (see, People v Leone,
 
 105 AD2d 757;
 
 People v Bratton,
 
 103 AD2d 368,
 
 supra).
 

 [5]
 

 . In response to the dissent’s attempt to revive former Chief Judge Cardozo’s appealingly phrased argument against the exclusionary rule
 
 (People v Before,
 
 242 NY 13, 21), we defer to the wisdom of former Supreme Court Justice Tom Clark, who stated: " '[TJhere is another consideration— the imperative of judicial integrity’ * * * The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws”
 
 (Mapp v Ohio,
 
 367 US 643, 659, quoting
 
 Elkins v United States,
 
 364 US 206, 222). Indeed, contrary to the dissent’s claim that our straightforward application of CPL 30.30 " 'breed[s] contempt’ for law and the judicial process” (dissenting opn, at 85), we conclude that the real source of "contempt for law” is the disregard of the law’s dictates by government officials, who lead by example
 
 (Olmstead v United States,
 
 277 US 438, 485 [Brandéis, J., dissenting]).
 

 [6]
 

 . The People’s reliance on a notation in the court file characterizing the hearing as one "on due diligence” is unpersuasive, since there is no way of knowing the origin of or reason for that characterization
 
 (cf., People v Berkowitz,
 
 50 NY2d 333, 347-349,
 
 supra).
 

 [1]
 

 . The majority twists the holdings and application of those cases and dangles a distinction without any legal differences as a justification for the courts, burying their heads like ostriches against the realistic appraisal of what is "going down” in these cases (majority opn, at 80, n 4).
 

 [2]
 

 . Even if we were to agree with the majority’s analysis as to the 69-day period, the critical number of 184 days attributed to the People, as required by the readiness statute to warrant dismissal, was in no event reached in this case. Because the trial court limited receipt of evidence and its judicial review to the period
 
 after
 
 issuance of the warrant, this Court is absolutely prohibited from making a de nova review and retrospective rule concerning the preindictment period of time, which defendant is asserting must be charged to the People. To rule otherwise, as the Court does, is to ignore and override fundamental preservation principles and fair, even-handed procedures.