People v Rollerson (2024 NY Slip Op 50291(U))

[*1]

People v Rollerson

2024 NY Slip Op 50291(U)

Decided on March 20, 2024

Criminal Court Of The City Of New York, Bronx County

González-Taylor, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 20, 2024
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Rosemarie Rollerson, Defendant.

Docket No. CR-016057-23BX

For the People: Darcel D. Clark, District Attorney, Bronx County
(by: ADA Miles J. Mianecki)
For the Defendant: The Bronx Defenders
(by: Upasna Saha, a law graduate, under the direction of
Imani Waweru, Esq.)

Yadhira González-Taylor, J.

On January 19, 2024, defendant moved for an order deeming the People's Certificate of Compliance ("CoC") invalid pursuant to Criminal Procedure Law ("CPL") §§ 245.20 and 245.50 (1), dismissing the accusatory instrument on statutory speedy trial grounds pursuant to CPL §§ 30.30 (1) (b), 30.30 (5), 170.30 (1) (e) and the New York State and Federal Constitutions, and granting such additional relief as the Court deems just and proper. On February 22, 2024, the People opposed defendant's motion in its entirety.
Upon review and consideration of the submissions, court file and relevant legal authority, the Court adjudicates defendant's motion to dismiss as follows:
The People's CoC, filed and served on September 29, 2023, was VALID; and
The prosecution, pursuant to CPL 30.30 (1), (b) 30.30 (5), 170.30 (1) (e), inter alia, was TIMELY; and
We respectfully REFER to the trial court for consideration of the suitability for remedy or sanction which is appropriate to the prejudice suffered by defendant pursuant to CPL § 245.80 occasioned by the deletion of PO Dustin's photograph; and
Defendant's motion to dismiss the accusatory instrument is DENIED.

 RELEVENT PROCEDURAL BACKGROUND
On July 23, 2023, defendant Rosemarie Rollerson was arrested and charged with violating Penal Law ("PL") §§ 120.05 (2) (assault in the second degree), a felony, 120.00 (1) (assault in the third degree), a misdemeanor, and 240.26 (1) (harassment in the second degree), a violation. Defendant was arraigned on July 24, 2023, and released under supervision. On September 14, 2023, the People dismissed the felony count and defendant was arraigned on a superseding information which added one count PL § 265.01 (2) (criminal possession of a [*2]weapon in the fourth degree). 

On September 29, 2023, the People filed their CoC and statement of readiness ("SoR") off-calendar and at a discovery conference held on December 22, 2023, defense counsel advised this Court that the People had not disclosed Giglio materials for non-testifying officers, body worn camera ("BWC") audit trails and an image of defendant which appears on Police Officer ("PO") Dustin's mobile as depicted in his BWC. The Court deemed the audit trails to be discoverable and ordered their disclosure within one week of the conference. Additionally, the instant motion schedule was set. On January 2, 2024, the People served a supplemental CoC ("SCoC") to which they appended BWC audit trails for all responding officers and Giglio material for non-testifying PO Urman. On February 22, 2024, the People served a second SCoC to which they appended materials they received the day before from the Bronx District Attorney's Crime Victim's Assistance Unit "CVAU") concerning services rendered to the complaining witness (the "CW").

DISCUSSION
 
 I. Applicable Standard for CoC Challenge

While there is no one-size fits all analysis for determining discovery compliance, this Court has held that "by following-up, the very essence of what it means to exercise due diligence," the prosecution's CoC can be deemed valid although some discovery is missing and/or belatedly disclosed (see People v Hernandez, 81 Misc 3d 1201[A], 2023 NY Slip Op 51201[U], *6 [Crim Ct, Bronx County 2023] citing People v Franklin, 78 Misc 3d 1232[A], 2023 NY Slip Op 50400[U], *6 [Crim Ct, Bronx County 2023]). Consequently, in response to a motion to strike their CoC, the People must demonstrate that they have met their discovery burden by detailing their efforts to obtain discoverable information (see Hernandez, 2023 NY Slip Op 51201[U], *15 citing People v Adrovic, 69 Misc 3d 563, 572 [Crim Ct, Kings County 2020]; CPL § 245.50 [3]). 
In People v Bay, ___ NE3d ___, 2023 NY Slip Op 06407 [2023], the Court of Appeals posited that trial courts evaluate prosecutorial due diligence based upon whether "the prosecution has exercised due diligence and made reasonable inquiries to determine the existence of material and information subject to discovery," a case-specific inquiry of the record at bar (see Bay, 2023 NY Slip Op 06407, *15-16 [emphasis added]; CPL §§ 245.20 [1], 245.50 [1]). 
II. The Parties' Arguments
Defendant avers that the People's CoC is invalid because they did not disclose BWC audit trails nor Giglio material for PO Urman until January 2, 2024 (affirmation of defendant's counsel at 10). Defendant further asserts that, in contravention of the legislative intent to require certification after all known material and information is disclosed, the prosecution's CoC functioned more as a placeholder while the People continued to gather outstanding materials (affirmation of defendant's counsel at 13). Defendant maintains that the People have yet to provide outstanding discovery, including Giglio information for non-testifying POs Ashraf and Dustin, and a photograph taken by PO Dustin; however, defendant withdraws her request concerning POs Diaz and Istorico (affirmation of defendant's counsel at 12). 
Next, counsel argues that the belated service of BWC audit trails pursuant to CPL § 245.20 (1) (e) must render the prosecution untimely because the People could not validly certify [*3]their compliance nor declare their readiness for trial pursuant to CPL § 30.30 until all known material and information subject to discovery had been disclosed (affirmation of defendant's counsel at 13-14). Defendant further asserts that the Court should deem Giglio impeachment materials for POs Urman, Ashraf and Dustin as mandated automatic discovery, such that belated disclosure and/or non-disclosure of said items renders the CoC filing invalid (affirmation of defendant's counsel at 14-15). Specifically, relying upon this Court's holding in People v Peralta, 79 Misc 3d 945, 952-956 [Crim Ct, Bronx County 2023], counsel claims that POs Ashraf and Dustin have a substantial nexus to defendant's arrest and investigation because they spoke to both the CW and EMS, and because PO Dustin's BWC depicts him taking a photograph which may show defendant or other pertinent information (affirmation of defendant's counsel at 16).
Initially, the People assert that CPL § 245.20 does not evince any legislative intent to require complete compliance with mandated disclosure prior to the CoC filing (affirmation in opposition at 8). While the prosecution contends that disputed discovery issues have already been partly resolved because device audit trails and Giglio materials for PO Urman were disclosed well before hearing or trial, the People argue that neither device audit trails nor Giglio material for a non-testifying officer are automatically discoverable (affirmation in opposition at 11).
The People maintain that CPL § 245.20 (1) (g) makes no specific reference to audit trails or metadata nor do audit trails, unlike BWC footage, provide statement evidence, factors they believe strongly mitigate against mandating automatic disclosure (affirmation in opposition at 13). Specifically, the prosecution argues that device audit trails provide purely technical information and in support of this contention submits an "AXON Device Audit Trail" report, generated on January 2, 2024, for the "audit report date range of 23 Jul 2023 — 23 July 2023," for the BWC worn by AO Aqieb (affirmation in opposition at 11-12). 
Next, the prosecution avers that CPL § 245.20 does not mandate disclosure of Giglio material for non-testifying officers because subsection (1) (k) (iv) pertains to information that tends to impeach the credibility of a testifying prosecution witness (affirmation in opposition at 15). Further, the People assert that while they belatedly disclosed Giglio material for PO Urman, he arrived at the scene after defendant had already been placed into custody and other than taking pedigree information and completing the booking process, this officer had no substantial nexus with defendant akin to the facts presented in Peralta supra (affirmation in opposition at 17). 

Similarly, the prosecution posits that although PO Ashraf spoke with the CW, he did so in the presence of AO Aqieb, who purportedly stepped away for only a minute to separate the CW and defendant before returning (affirmation in opposition at 18-19). Furthermore, the prosecution argues that PO Dustin's involvement with the arrest and investigation was equally incidental where, despite speaking with the CW and EMS personnel, he performed no actions for which AO Aqieb was not also present (affirmation in opposition at 19). The People concede that they have been advised by PO Dustin that a photograph he took at the scene had been deleted but nonetheless was captured by his BWC, submitted as an exhibit to their opposition, but they maintain that the BWC image is entirely duplicative which argues against the imposition of any sanction or remedy pursuant to CPL § 245.80 (1) (b) (affirmation in opposition at 21-22). 
Defendant's reply brief generally reiterates her arguments and specifically suggests that [*4]the timestamp which appears on the screenshot image taken from PO Dustin's BWC, originally submitted by the People in support of their argument that the deleted photograph is merely duplicative of the BWC, does not comport with his BWC audit trail, an excerpt of which is included in counsel's brief (reply affirmation of defense counsel) [FN1]
.
III. The Court's Analysis
In People v Vargas, this Court opined that "BWC audit trails- essentially chain of custody metadata that tracks the creation or revision of a document- have negligible utility for the defense" and, thus, were not held to be within the ambit of mandatory automatic disclosures (see Vargas, 78 Misc 3d 1235[A], 2023 NY Slip Op 50425[U], * 8 [Crim Ct, Bronx County 2023]. However, this Court is no longer persuaded by arguments advanced by the People which suggested that BWC footage, unlike drugs, is self-authenticating and not fungible, and that the care and maintenance of device audit trail metadata was outside of the prosecution's possession, custody, and control. 
Audit Logs
As a threshold matter, the NYPD Patrol Guide Procedure Number 212-123, which governs the use of Body-Worn Cameras, provides, in pertinent part, that the arresting officer/assigned officer is required to annotate BWC footage in an "Activity Log" which describes the circumstances of the encounter, investigation or arrest document and that "[i]f category that identifies incident is not available, enter pertinent details of event in the description section of evidence detail page" (see New York City Police Department Patrol Guide Procedure No. 212-123, ¶ ¶ 12-13). Hence, these mandated annotations to BWC footage, which are not constrained by fixed dropdown categories, are unquestionably automatically discoverable as police reports (see New York City Police Department Patrol Guide Procedure No. 212-123, ¶ 13; see also CPL § 245.20 [1][e]). Additionally, as succinctly noted by Honorable Wanda L. Licitra in People v Torres, audit logs provide forensic information concerning who reviewed the BWC footage and whether notations or tags were augmented (see Torres, 79 Misc 3d 1204[A], 2023 NY Slip Op [U], *3 [Crim Court, Queens County 2023] ["The audit logs are PDFs that detail the police's actions on a video file throughout its entire life"]). 
BWC Device Audit Trails
The extent to which the terms "audit trails" and "audit logs" have been used interchangeably, even apparently by NYPD, has obscured consideration of what type of information is provided by audit trails and whether their disclosure should be mandated by CPL § 245.20 (1). Based upon the People's Exhibit 9, the Device Audit Trail for AO Aqieb's BWC, the report includes the following information:
Date/time of an event; and
Device firmware version; and
Device synchronization to the Axon server; and
Description of the event, such as: audit log created, uploaded, or deleted from device, camera disconnected from Axon Dock, event button pressed, audio recording disabled due to video buffering default, and recording stopped due to button press; and
Additional information concerning battery percentage, video count and evidence identification.
Although the prosecution argues that device logs [trails] provide purely technical information, the essence is in the details. The People's insistence that no substantive information can be gleaned from trails which is not already evident from the BWC recording itself is belied by the fact that these device trail reports apparently track every permutation involved in the functioning of the BWC recording. Therefore, this Court now finds that an audit trail is more expansive than "metadata that tracks the creation or revision of a document" (see Vargas, 2023 NY Slip Op 50425[U], *8). Nor can we maintain that this information has negligible utility for the defense where, as noted in People v Ballard, a device audit trail report "verified that the BWC video footage deactivated due to a dead battery in the camera, and not due to a manual shut off by the officer" (see Ballard, 202 NYS3d 683, 692 [Crim Ct, Queens County 2023] [emphasis added]). Although the words "audit trail" do not appear in the statute, a device audit trail is nonetheless a police report subject to mandatory disclosure pursuant to CPL § 245.20 (1) (e).
Here, the People recount their unsuccessful attempts on or about December 1, 2023, to obtain audit trails through Evidence.com, the platform designated as a video management system for NYPD to share Axon BWC files with district attorney's offices and prosecutors, and from the Technical Investigation Bureau of the Bronx District Attorney's office, which advised the assigned ADA that he needed "a court order directing the disclosure of said materials" (affirmation in opposition at 11-12). The prosecution further avers that following this Court's directive to disclose the audit trails, on December 29, 2023, after the assigned ADA was again unable to access the trail report, he contacted the Technical Investigation Bureau and asked that a request be submitted to NYPD. On January 2, 2024, said device audit trail reports were delivered via email and uploaded to OneDrive. 
In theory, the disquiet occasioned by the People's repeatedly rebuffed requests for police reports concerning mandated electronic evidence should be negligible where the NYPD Patrol Guide provides that the arresting/assigned officer is required to prepare a "District Attorney Body-Worn Camera Checklist," and because 
"The [BWC] video management system maintains an audit trail for all transactions conducted in the system"
(see New York City Police Department Patrol Guide Procedure No. 212-123, ¶ 16 and § Additional Data, Operational Considerations, respectively [emphasis added]). It is respectfully suggested that the BWC checklist should be amended to include reports concerning the activity logs and device audit trail reports because both are discoverable pursuant to CPL § 245.20 (1) (e).
Nevertheless, the Court declines to penalize the prosecution for the disclosure of supplemental materials pursuant to a court directive and, thus, we find that the circumstances at bar do not warrant striking the CoC based upon the belated disclosure of the audit trail reports. 
Giglio Disclosure for Non-Testifying Officers
In Peralta, we held that:
"The demonstrated involvement of Det. Schwartz, Officer Diaz and Sgt. Filchukov in defendant's interrogation and arrest was hardly fleeting or tangential and their disciplinary records should not be inscrutable just because the People have strategically decided, as is the prosecution's prerogative, not to call them as witnesses"
(see Peralta at 954).
PO Urman
The record at bar, even as recited by defendant, demonstrates that defendant was already in custody when PO Urman arrived and that he questioned defendant while AO Aqieb was present. Counsel has not proffered any evidence of a substantial nexus between PO Urman and defendant's arrest nor the investigation of the circumstances which precipitated the arrest. The People's decision to supplement their disclosures with Giglio materials for PO Urman has no bearing on the validity of their CoC.
PO Ashraf
Counsel argues that PO Ashraf had a demonstrated nexus to defendant's arrest and investigation because he questioned the CW and her husband, and spoke to EMS personnel, and this information "provides unique avenues of investigation and defense theories to pursue" (affirmation of defendant's counsel at 15). Counsel is not constrained to subpoena the CW's husband if defendant believes there are plausible as-yet undetermined strategies to pursue based upon the information imparted to PO Ashraf. However, the record at bar suggests that other than requesting the CW's pedigree information, and where AO Aqieb was also present during the questioning, there was nothing about PO Ashraf's participation in the investigation that was singular or integral such that Giglio disclosure is warranted.
PO Dustin
The People concede that a photograph taken by PO Dustin at the arrest scene has since been deleted but argue that "such material [the deleted photograph] is not automatically discoverable because it does not exist" (affirmation in opposition at 20). This proposition would necessarily condition a discoverability determination upon whether the People or law enforcement agents under their control retained the evidence in question- an outcome that no reasonable interpretation of CPL § 245 would countenance. 
Alternatively, the prosecution asserts that images from PO Dustin's BWC, submitted as Exhibit 4 to the People's opposition, depict him taking a photograph of defendant and, as such, the BWC footage is duplicative of the deleted photograph. In reply, defense counsel states that the timestamp which appears on the screenshot image taken from PO Dustin's BWC does not comport with the information from his BWC audit trail. 
However, the record does not confirm counsel's claim that a discrepancy exists between the audit trail and screenshots from PO Dustin's BWC footage because, curiously, the excerpted audit trail report submitted by defendant ends at "Item 112, Date/Time 07/23/2023 10:12:44.491 -0400" while the images submitted by the prosecution which purport to depict PO Dustin taking the photograph and the defendant, respectively, are denoted as "10:13:33 -0400" and "10:13:34 -0400," respectively. Defendant invites the Court to contrast and compare the screenshots to the audit trail and draw a negative inference; however, counsel has merely advanced conjecture in want of evidence. Moreover, counsel's argument that another screenshot, annexed as defense Exhibit M, offers a closer look at the since-deleted photograph, tends to buttress the prosecution's claim that the BWC footage is duplicative and, as such, argues against striking the CoC as illusory. 
Finally, counsel's argument that PO Dustin had a substantial nexus to the arrest and investigation is premised upon him taking and deleting a photograph which depicted defendant. However, there is no basis in the record to discern anything unique or integral about PO Dustin's involvement with this case such that Giglio disclosures are warranted.
CoC Challenge
The Court of Appeals, rejecting a standard of strict compliance to gauge prosecutorial compliance with CPL § 245.20 disclosure obligations, instead emphasized several factors that courts should consider to determine whether the prosecution exercised due diligence to discharge their mandated disclosures, including "the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (see Bay, 2023 NY Slip Op 06407, *16).
Although the People did not disclose device audit trail reports for all responding officers until their SCoC filing on January 2, 2024, they did so in prompt response to an order issued by this Court on December 22, 2023, which deemed the audit trails to be discoverable. Indeed, the record at bar demonstrates that the prosecution served and filed their Automatic Disclosure Form on September 25, 2023, and further served and filed additional discovery via email and OneDrive on September 28, 2023, and with their CoC on September 29, 2023. The People assert, and defendant does not rebut, that the parties did not confer concerning discovery [*5]deficiencies until November 9, 2023, when new defense counsel was assigned.
Considered through the lens of the Bay decision, this Court credits the due diligence heretofore exercised by the People and their prompt compliance with a disclosure order concerning a category of discovery about which courts of concomitant jurisdiction disagree. Consequently, we decline to invalidate the CoC based upon the prosecution's belated audit trail report disclosure. Additionally, while the Court finds that the photograph taken by PO Dustin was discoverable pursuant to CPL § 245.20 (1) (h), we respectfully refer to the trial court for consideration of the suitability for remedy or sanction which is appropriate to the prejudice suffered by defendant pursuant to CPL § 245.80.
Accordingly, the CoC, filed and served on September 29, 2023, was valid. 
IV. The CPL § 30.30 Calculation

In a motion to dismiss misdemeanor charges pursuant to CPL § 30.30 (1), the defendant has the initial burden to demonstrate that the prosecution failed to declare trial readiness within the statutorily prescribed time, 90 days (see CPL § 30.30 [1][b]); People v Luperon, 85 NY2d 71, 77-78 [1995]). The burden then shifts to the People to identify excludable delays (see Luperon, 85 NY2d at 78).
In the case at bar, the People's 30.30 calculation commenced on July 24, 2023, the day after defendant's arraignment. When the People filed a valid CoC on September 29, 2023, they declared their readiness for trial and stopped their speedy-trial clock. Hence, the People were ready for trial 67 days after arraignment, within their statutorily allotted time (see CPL § 30.30 [1] [b]).

 CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, the Court adjudicates defendant's motion to dismiss as follows:
The People's CoC, filed and served on September 29, 2023, was VALID; and
The prosecution, pursuant to CPL 30.30 (1), (b) 30.30 (5), 170.30 (1) (e), inter alia, was TIMELY; and
We respectfully REFER to the trial court for consideration of the suitability for remedy or sanction which is appropriate to the prejudice suffered by defendant pursuant to CPL § 245.80 occasioned by the deletion of PO Dustin's photograph; and
Defendant's motion to dismiss the accusatory instrument is DENIED.
This constitutes the opinion, decision, and the order of the Court.
Dated: March 20, 2024
Bronx, New York
Hon. Yadhira González-Taylor, J.C.C.

Footnotes

Footnote 1:Although counsel refers to the Audit Trail report for PO Dustin as Exhibit J, no such exhibit was annexed to defendant's motion.