People v Maldonado (2025 NY Slip Op 51049(U))

[*1]

People v Maldonado

2025 NY Slip Op 51049(U)

Decided on June 20, 2025

Criminal Court Of The City Of New York, Bronx County

Sorrentino, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 20, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Yandel Placeres Maldonado, Defendant.

Docket No. CR-030600-24BX

For the Defendant:
Romer Walter Cisneros 
The Bronx Defenders
For the People:
Darcel D. Clark, District Attorney, Bronx County
(by: ADA Daniel Beloosesky)

Joseph M. Sorrentino, J.

The defendant Yandel Placeres Maldonado moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("CPL") §§ 30.30 (1) (b) and 170.30 (1) (e) based on the People's purported failure to timely discharge their discovery and speedy trial requirements pursuant to CPL §§ 245.20, 245.50 (3), and 30.30 (5).
Upon review and consideration of the submissions, court file, and relevant legal authority, the Court GRANTS the defendant's motion for dismissal.
RELEVANT PROCEDURAL BACKGROUND
On December 2, 2024, the defendant Yandel Placeres Maldonado was arrested and charged with three counts of violating Vehicle and Traffic Law §§ 1192 (2) (driving while intoxicated, per se), 1192 (3) (driving while intoxicated [common law]), both misdemeanors, and 1192 (1) (driving while impaired), a violation. The defendant was arraigned the following date and released on his own recognizance.
At the appearance held on March 4, 2025, this Court noted that the People had filed their Certificate of Compliance ("COC") and Statement of Readiness ("SOR") off calendar on February 28, 2025, and that the People had subsequently filed a Supplemental COC ("SCOC") and their second SOR on March 2, 2025. The Court then adjourned the case for a discovery conference after hearing multiple objections to the COC from the defendant.
On March 7, 2025, the parties appeared before this Court for the discovery conference. As the issues at hand remained unresolved, a motion schedule was set. The Defense filed this motion on March 28, 2025. After requesting an extension, the People filed their response, originally due April 17, 2025, on April 25, 2025. The Defense filed its reply on May 16, 2025. 

DISCUSSION

I. The Certificate of Compliance Challenge
Pursuant to CPL § 245.20, the People are required to disclose automatic discovery within specific timeframes. Automatic discovery includes "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control," which the statute further details in a non-exhaustive list of materials (CPL § 245.20[1]). Further, "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution" (CPL § 245.20[2]). The COC shall state that, "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (CPL § 245.50[1]). If the People disclose discovery after a COC is filed pursuant to their continuing duty to disclose, they must file a SCOC (CPL § 245.50[1]). CPL § 245.50(1) further directs that "[n]o adverse consequences to the prosecution or prosecutor shall result from the filing of a [COC] in good faith and reasonable under the circumstances." As such, the People must exercise due diligence to the degree that is reasonable under the circumstances and file their COC in good faith.
In People v Bay, the Court of Appeals found that, in evaluating prosecutorial due diligence, the "key question in determining if a proper certificate of compliance has been filed is whether the prosecution has exercised due diligence and made reasonable inquiries to determine the existence of material and information subject to discovery," a case-specific inquiry of the record at bar (see People v Bay, 41 NY3d 200, 211-213 [emphasis added]; see also CPL §§ 245.20 [1], 245.50 [1]). The Bay Court makes clear that to oppose a motion to dismiss claiming that the prosecution's COC is illusory, the People "bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (see Bay at 213 [emphasis added]). In evaluating a prosecutor's level of due diligence, Bay provides that "courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (Id.).
II. The Parties' Arguments
The gravamen of the defendant's motion is that the prosecution's COC, SCOC, and SORs were invalid due to the prosecution's failure to exercise due diligence in obtaining and disclosing Intoxicated Driver Testing Unit ("IDTU") footage, the ICAD Report, as well as numerous other materials that were listed in the COC, but were not actually provided to the Defense, demonstrating that the prosecution failed to review their own discovery before filing the COC (Defense's motion at 10). According to the defendant, the nondisclosure of the IDTU footage should have been immediately apparent as it is routinely generated in VTL § 1192 cases, and any video file containing the footage would have been labeled with "IDTU." Id. In addition, like the IDTU footage, the defendant argues that the ICAD report is also routinely produced and [*2]disclosed, but it was not turned over (Defense's motion at 11-12). Lastly, the defendant argues that a lack of due diligence is further demonstrated by the fact that numerous materials listed in the COC were not disclosed, and at the time of the filing of the COC, the only materials the defendant received were memobooks, Giglio material, and some body-worn camera footage (Defense's motion at 11).
In response, the People contend that they did file their February 28, 2025, COC in good faith and with due diligence, that complete compliance with automatic discovery is not required before filing a COC, and that they timely and diligently responded to the defendant's requests for discovery (People's response at 1). The People state that they "inadvertently believed" that they had disclosed the IDTU footage because they had requested the footage on February 4, 2025, and were told that they should have it in their possession (People's response at 3, 5-6). On March 7, 2025, the People discovered that the "Bronx DA Intake Unit" had the IDTU footage in their possession since December 2, 2024 (People's response at 6). The People also argue that the COC was filed in good faith, and as such, the COC should not be found invalid for the belated disclosures (People's response at 7-8). Lastly, the People argue that the COC should not be found invalid because the defendant "lied in wait" to communicate objections to the COC on the 91st day of the case (People's response at 13-14).
III. The Court's Analysis
A. The Belated Disclosure of the IDTU Footage
The IDTU footage is discoverable pursuant to CPL § 245.20(1)(g), and as it is generated by the NYPD, it is therefore deemed in the possession of the People (CPL § 245.20[2]). Indeed, as this Court has previously ruled, IDTU footage is perhaps one of the most significant pieces of discovery in a VTL § 1192 prosecution (see People v Vargas, 171 N.Y.S.3d 877, 881 (Crim. Ct. Bx. 2022) ("the People here failed to disclose the IDTU video, one of the most important pieces of evidence in a DWI prosecution. The IDTU video is a video of the accused person from the night of their arrest, undergoing the formal blood alcohol analysis and performing coordination tests. It is a critical piece of evidence about an essential element of driving while intoxicated—namely, whether the person was intoxicated. In a DWI case, the People must, at the very least, make sure that the IDTU video is properly disclosed"). Thus, the failure to turn over the IDTU footage constitutes a glaring omission in the COC filed on February 28, 2025, because it is a piece of crucial discovery in a VTL § 1192 prosecution.
Here, the defendant posits that the People did not disclose the IDTU footage until March 7, 2025, following the discovery conference held before this Court and after multiple notifications by the defendant. In their response, the People failed to provide any record of due diligence to obtain and disclose the IDTU footage prior to the filing of the COC. The only date prior to the filing of the COC that the People indicate that they attempted to obtain any discovery at all was February 4, 2025, which was already 63 days into the prosecution. As exhibits to their response, the People provided emails that contain one generalized request for discovery on February 4, 2025, and another email to one police officer, PO Ho, stating the IDTU footage was missing from that officer's shared videos (People's response, at Exhibits 5 and 5(A)). This Court notes that the first email does not include the IDTU footage in the People's list of requests, and that PO Ho was not the IDTU officer in this case. PO Ho did not reply until March 1, 2025, and [*3]in that time, there is no record that the People attempted to follow up with the precinct, PO Ho, or PO Itin, the actual IDTU officer, to obtain the footage prior to the filing of the COC.
One single, generalized request for discovery, which did not include a request for the IDTU footage, and one email to the wrong police officer about the IDTU footage, without any follow-up to ensure receipt of all materials, does not constitute due diligence. Additionally, the failure to review the discovery materials to ensure all discoverable materials are contained therein does not meet the standard of due diligence under Bay especially wherein the non-disclosure of the IDTU footage should have been obvious to any prosecutor exercising due diligence. As the defendant points out, any other cited acts of due diligence by the People occurred after the filing of the COC and do not retroactively remedy the obvious lack of due diligence prior to the filing of the COC (Defense's reply at 3).
Moreover, the People's own response indicates that their Intake Unit had been in possession of the IDTU footage since December 2, 2024, thus, they could have made one request to that unit prior to filing the COC, but no requests were made until after the COC had been filed (People's response 6). The speed by which the People subsequently obtained and shared the IDTU footage after discovering it in the possession of the Bronx DA Intake Unit is insufficient to establish due diligence under the circumstances because the IDTU footage is the touchstone of a VTL § 1192 prosecution and should have been turned over with the COC.
B. The Belated Disclosure of the ICAD And Arrest Packet
The defendant further argues that the February 28, 2025, COC was invalid because numerous items listed on the COC were in fact not turned over on that date, including the ICAD, and they were only turned over on March 4, 2025.[FN1]
Although the defendant argues in their motion that the ICAD remained outstanding at the time of the filing of the motion, the Court credits the People's representation that it was turned over on March 4, 2025, as part of the arrest [*4]packet. The defendant does not counter this representation in reply.
First, the fact that the only materials turned over on February 28, 2025, consisted of the memobooks, Giglio Materials, and some body-worn camera footage militates against a finding of due diligence as the People omitted numerous standard discovery materials in any criminal case and in any VTL § 1192 case. It is clear that the prosecutor made no efforts to review what had actually been turned over on February 28, 2025, to ensure that the defendant received even the balance of discoverable materials in this case. As noted in footnote 1, numerous materials directly relating to the subject matter of the case were not turned over, including paperwork detailing the results of sobriety tests, the IDTU tests, the BAC results, the arrest report, the complaint reports, and other routine materials that would undoubtedly be relevant for trial. Although the Court agrees with the People that the format of the discovery being turned over is of no matter as the defendant asserts, the fact remains that hardly any discovery was turned over on February 28, 2025, with the COC - the People do not dispute these items were not provided on that date.
Utilizing the Bay factors, this Court finds that they weigh in favor of the defendant and finding that the COC filed on February 28, 2025, was invalid. The Court finds that as to the first factor, the prosecutor failed to make sufficient efforts to comply with CPL § 245.20 prior to the filing of the COC. The People note that they first received the arrest packet on December 7, 2024, however, that packet, containing numerous materials, was not disclosed until March 4, 2025, after the filing of the COC.
The Court also finds that other factors — the volume of the discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse — all weigh in favor of the defendant. As noted, most of the materials for this case were not turned over on February 28, 2025, thus, the volume of outstanding discovery surpassed the amount of the discovery actually provided at the time of the filing of the COC. Although certain materials involved in a VTL § 1192 case are complex and voluminous - such as gas chromatography reports - the complexity of this case is minimized by the fact that the People have knowledge of all VTL § 1192 related discovery materials that they know should be turned over in each case. This case is no more complex than any other VTL § 1192 prosecution. Coupled with the lack of complexity, the missing materials should have been obvious to a prosecutor exercising due diligence, who would have realized that none of these materials were sent to the Defense. Further, given that all of these items were listed in the COC itself demonstrates knowledge on part of the prosecutor that they should have been turned over. The explanation for this discovery lapse provided by the People, i.e., that the nondisclosure resulted from either an oversight or a technical error, is insufficient under the circumstances.
Lastly, the sole factor that weighs in the favor of the People is their response when apprised of any missing discovery. Upon receiving the discovery objections from the defendant on March 4, 2025, the People began to make subsequent requests for discovery and did send over a vast majority of the outstanding discovery on that date.
Accordingly, on balance of the Bay factors, the People's COC and SOR filed on February 28, 2025, are deemed invalid based on the failure to disclose the IDTU footage and an additional voluminous number of materials prior to the filing of the COC. Thus, the filing of the COC and SOR did not stop the prosecution from accruing additional speedy trial time.
The People's contention that the defendant "lied in wait" before notifying them of any [*5]discovery objections is without merit. Rather, this Court finds that the defendant acted as soon as practicable by notifying the People of any missing discovery on the 91st Day of the case — just four days after the filing of the COC.
IV. The CPL § 30.30 Calculation
In a motion to dismiss misdemeanor charges pursuant to CPL § 30.30 (1), the defendant has the initial burden to demonstrate that the prosecution failed to declare readiness for trial within the statutorily prescribed time, 90 days (see CPL § 30.30 [1] [b]); People v Luperon, 85 NY2d 71, 77-78 [1995]). The burden then shifts to the prosecution to identify excludable delays (see id. at 78).
The accusatory instrument in this case was filed on December 2, 2024. The defendant was arraigned on December 3, 2024. Although the People filed and served their COC and SOR on February 28, 2025, these filings were invalid and failed to stop the statutory speedy trial clock. Therefore, the speedy trial clock did not stop until at least March 7, 2025, when this instant motion schedule had been ordered.[FN2]
The Court finds that at least 95 days are chargeable against the People. Because the People are not within their statutorily allotted time to bring this case to trial, the defendant's motion to dismiss the accusatory instrument is GRANTED.

CONCLUSION
Based upon the foregoing, the defendant's motion for dismissal is GRANTED.
This constitutes the opinion, decision, and order of the Court.
Dated: June 20, 2025
Bronx, New York

Footnotes

Footnote 1:Aside from the ICAD, the Defense did not specify what items listed in the February 28, 2025 COC were not actually disclosed until March 4, 2025. Instead, the Defense noted the items that had been turned over on February 28, 2025, including memobooks, Giglio materials, and some body-worn camera footage. By comparing this list of disclosed materials with the COC listing all materials, the Court is left to conclude that the following, in addition to the ICAD, were belatedly disclosed on March 4, 2025: 1) 911 Certification; 2) Event Chronology; 3) Radio Run; 4) Arraignment Card; 5) Arrest (Command) Log; 6) Arrest Checklist; 7) Arresting Officer Intoxicated Driver Report; 8) Arrest Report; 9) Body-Worn Camera Checklist; 10) additional body-worn camera footage; 11) Chain of Custody Report; 12) CMI Intoxilyzer 9000 — Alcohol Analyzer BAC Results; 13) Complaint Report; 14) Complaint Report Worksheet; 15) DA Summary; 16) DCID Report; 17) DMV Abstract; 18) Entity Summary Report; 19) Highway Intoxicated Driver Examination Report; 20) Prisoner Holding Pen Roster; 21) IDTU Officer Health Card Permit; 22) IDTU Packet, including the calibration reports, the DOH Intoxilyzer 9000 Affidavit, Gas Chromatography Reports, Guth Labs Simulator Solutions, and the Simulation Solutions; 23) Miranda Form; 24) Mugshot; 25) Original Arrest Report; 26) Prisoner Movement Slip; 27) Prisoner Pedigree Card; 28) Property Vouchers; 29) RALL Report; and 30) Roll Call Logs.

Footnote 2:Although the IDTU footage was turned over on this date, this did not occur until after this Court ordered the motion schedule. Further, the People did not file a SCOC and SOR documenting this belated disclosure.