People v Vergara (2025 NY Slip Op 51120(U))

[*1]

People v Vergara

2025 NY Slip Op 51120(U)

Decided on July 18, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 18, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Jorge Arrieta Vergara, Defendant.

Docket No. CR-030077-24BX

For the Defendant: 
The Bronx Defenders
(by: Jalen Matney, Esq.)
For the People: 
Darcel D. Clark, District Attorney, Bronx County
(by: ADA Teresa Piccolo)

Deidra R. Moore, J.

On November 24, 2024, Jorge Arrieta Vergara (hereinafter referred to as "Defendant"), was arrested and charged with Penal Law ("P.L.") 145.00[3], a class A misdemeanor, as well as Vehicle and Traffic Law ("V.T.L.") § 1192[2], an unclassified misdemeanor, and related charges. The Defendant was arraigned the same day and released on his own recognizance.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30.[1][b] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution has not exercised due diligence to disclose all discoverable materials in its possession prior to filing the certificate of compliance. Therefore, Defendant's motion is GRANTED.[FN1]
RELEVANT FACTUAL AND PROCEDURAL
BACKGROUND
On November 24, 2024, Defendant was arraigned on charges of C.P.L. 145.00[3], criminal mischief in the fourth degree, as well as V.T.L. § 1192[2], driving while intoxicated ("DWI"), and related charges. The Defendant's arrest followed his alleged involvement in a car accident with another vehicle. The case was adjourned to January 10, 2025, for conversion and [*2]discovery compliance.
On January 10, 2025, the prosecution was neither converted nor discovery compliant. The case was adjourned to February 26, 2025, again for conversion and discovery compliance. On February 24, 2025, the prosecution filed and served, off-calendar, a supporting deposition, certificate of compliance ("COC"), and statement of readiness ("SOR").
On February 25, 2025, defense counsel e-mailed the assigned prosecutor, asserting that multiple discoverable items had not been disclosed.
On February 26, 2025, the parties appeared for a discovery conference. Defense counsel made a record that multiple items remained outstanding, including the video footage from the Intoxicated Driver Testing Unit ("IDTU"), the IDTU officer's activity log, the police accident report, and photographs taken at the scene by the arresting officer depicting vehicular damage. The parties were ordered to confer, and the case was adjourned to March 7, 2025, again for discovery conference. Defense counsel followed up with the assigned prosecutor by e-mail on March 4, 2025, and the parties spoke on the phone on March 6, 2025.
At the discovery conference on March 7, 2025, the People shared the IDTU officer's activity log. However, the IDTU footage, the accident report, and the photographs from the scene remained outstanding. The defense objected to the COC's validity, and the instant motion schedule was set. On March 10, 2025, the People disclosed the IDTU footage and the police accident report and filed a supplemental certificate of compliance ("SCOC").
By motion dated March 20, 2025, Defendant moved to strike the COC and demanded dismissal of the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e], as the prosecution was not ready for trial within the statutorily allotted ninety-day period. The People filed their opposition on April 18, 2025; the defense reply followed on April 25, 2025.
LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where, as here, the top count charged is a misdemeanor punishable by more than three months' imprisonment (C.P.L. § 30.30[1][b], P.L. § 145.00[3], and V.T.L. § 1193[1][b][i]).
The speedy trial clock begins to run with the commencement of the criminal action—here, the filing of the accusatory instrument (C.P.L. § 1.20[17]; People v. Smietana, 98 NY2d 336, 340 [2002]). The speedy trial clock is tolled when the People file and serve a valid certificate of discovery compliance and statement of readiness for trial (C.P.L. §§ 245.50[3] and 30.30[5]). A valid statement of readiness certifies that the People "have done all that is required of them to bring the case to a point where it may be tried" (People v Englund, 84 NY2d 1, 4 [1994].
Before the prosecution may be deemed ready for trial, they must disclose to the defense "all items and information which relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (C.P.L. §§ 245.20[1]). Discoverable items possessed by "any New York state or local police or law enforcement agency" are deemed to be in the prosecution's possession (C.P.L. § 245.20[2]).
After the People have turned over all materials subject to discovery, they must file with the court and serve on the defense a certificate of compliance, certifying that, "after exercising [*3]due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (C.P.L. § 245.50[1]. Absent "an individualized finding of special circumstances," the People may not validly declare their readiness for trial until they have provided all discoverable material to the defense and filed a proper COC (C.P.L. § 245.50[3]).
The defense is required to notify the prosecution regarding "any potential defect or deficiency" with the certificate of compliance "as soon as practicable" (C.P.L. § 245.50[4][b]). This statutory provision discourages the defense from the gamesmanship of delaying notice to the prosecution as "the speedy trial clock ticks loudly in the background" (People v Weissinger, 74 Misc 3d 1225(A) [Henrietta Just Ct 2022] [internal citation omitted]).
When the validity of a certificate of compliance is challenged, the burden is on the People to demonstrate that they exercised due diligence to comply with their discovery obligations prior to filing (People v Bay, 41 NY3d 200, 213 [2023]). A court evaluating the prosecution's due diligence should consider, among other case-specific factors, the prosecution's efforts to comply with their discovery obligations; the volume of discovery provided, and the amount of discovery outstanding; the complexity of the case; how obvious missing discovery would be to a prosecutor exercising due diligence; any explanations for the discovery lapse; and the prosecution's response when apprised of missing discovery (id. at 212).
DISCUSSION
I. The Parties' Arguments
A. The Missing Items
The defense moves to invalidate the February 24, 2025, COC based on multiple items that were not disclosed prior to its filing. First, Defendant asserts that the IDTU videos were missing from the disclosed material (citing C.P.L. § 245.20[1][g], which requires disclosure of "[a]ll tapes or other electronic recordings" in the People's possession that "relate to the subject matter of the case"). Second, Defendant asserts that the people have yet to share evidentiary photographs taken by an officer at the scene (citing C.P.L. § 245.20[1][h], which directs the People to disclose "[a]ll photographs . . . made or completed by a public servant engaged in law enforcement activity" when those photos relate to the subject matter of the case).
Finally, Defendant asserts that two police reports were not timely shared: the NYPD police accident report and the IDTU officer's activity log. Defendant asserts that these items are discoverable under C.P.L. § 245.20[1][j], which requires disclosure of "[a]ll reports, documents records, data, calculations or writings. . . concerning physical or mental examinations, or scientific tests or experiments or comparisons, relating to the criminal action or proceeding which were made by or at the request or direction of a public servant engaged in law enforcement activity." Presumably, Defendant cites C.P.L. § 245.20[1][j] because the missing activity log belongs to the IDTU officer who conducted the breathalyzer test and the field sobriety tests. In any case, both the accident report and activity log are discoverable under C.P.L. § 245.20[1][e], which requires disclosure of "all police reports, notes of police and other investigators, and law enforcement agency reports."
B. The Defendant's Argument
The Defense argues that the COC is invalid because the prosecution did not exercise due diligence to disclose all discoverable materials prior to its filing. Defendant contends that the prosecution "blatantly disregarded" its discovery obligations pursuant to C.P.L. § 245.20[1][a][ii], which requires the prosecution to turn over automatically discoverable items within 35 calendar days after arraignment when the defendant is not in custody.[FN2]
Here, no discovery was shared with the defense until 92 calendar days after arraignment, on the 90th chargeable day [FN3]
(Defense Motion at 11). The defense asserts that, as the People were running out of speedy trial time, they filed a "placeholder" COC at 11:03 p.m.[FN4]
on the 90th chargeable day in an attempt to stop the speedy trial clock while they "continue[d] to gather discovery" (id. at 9).
The defense emphasizes that essential items of discovery were belatedly disclosed, most notably, videos recorded in the Intoxicated Driver Testing Unit room of the 45th Precinct. The defense notes that this room contains three surveillance cameras, which record "one's performance and/or refusal of a breathalyzer test, as well as one's performance and/or refusal of Standardized Field Sobriety Tests" (Defense Motion at 11). Here, Defendant is alleged to have taken a breathalyzer test, which would have been captured on the IDTU footage. Defendant asserts that the belatedly disclosed footage is "run-of-the-mill evidence" routinely shared in DWI cases in the Bronx (id. at 8). Moreover, the defense highlights, the prosecution was notified of the missing footage on February 25, 2025, the day after the COC was filed, but did not disclose this footage until March 10, 2025, after the instant motion schedule was set.
Defendant further argues that the People should have been aware that the photographs taken at the scene by the responding officer were missing, as the officer can be seen on body-worn camera ("BWC") footage taking the photos (Defense Motion at 12). Finally, Defendant asserts that police accident reports are generated in every case involving a vehicle accident, and that they contain crucial information about the case, including "statements by at least one driver of how the accident is alleged to have occurred," as well as diagrams and notations about damage observed on the vehicles (id.).
C. The People's Argument
The People argue that they exercised due diligence prior to the COC's filing, noting that "substantial discovery" had been shared with Defendant (People's Opposition at 9). The prosecution refers to discovery compliance as an "ongoing process" and details its efforts to obtain discovery prior to filing: the People first requested discovery from the NYPD on December 30, 2025, then sent follow up e-mails on January 30 and 31, 2025, as well as on February 6, 2025. The People state that they received discovery from the NYPD on February 6, 2025, then served the discovery, the supporting deposition, the certificate of compliance, and the statement of readiness on February 24, 2025.[FN5]
In addition, the People note, they sent an e-mail directly to the arresting officer on January 27, 2025, specifically requesting the photographs taken at the scene.
The People explain that the IDTU videos were "inadvertently not disclosed" because the videos were generated via the Defendant's arrest number (People's Opposition at 10). The assigned prosecutor was out of the office on multiple days between defense counsel's first e-mail regarding outstanding items, and the sharing of the IDTU footage on March 10, 2025. Regarding the belatedly disclosed activity log and accident report, the People note that the former was shared with defense counsel on March 6, 2025, and the latter was shared on March 7, 2025. The People state that they believed that these items were contained in the discovery obtained from the NYPD, although neither the accident report nor the activity log are listed as having been disclosed on the COC (People's Opposition Exhibit 1).[FN6]

To date, the photographs taken of damage to the vehicles remain outstanding. The People note that they have continued to attempt to obtain these photos by reaching out to the arresting officer, unsuccessfully, by telephone on March 7, 2025, and by e-mail on April 18, 2025. The People further assert that the photographs may no longer exist, and that the photographs are duplicative of some of the body-worn camera footage, as the damage to the vehicles is also captured on this footage (People's Opposition at 11),
II. The Court's Analysis
A. Validity of the February 24, 2025, Certificate of Compliance
The People filed their certificate of compliance at 10:59 p.m. on February 24, 2025, the [*4]90th chargeable day in the case. At the time of the COC's filing, multiple discoverable items remained outstanding, including the IDTU footage, the accident report, the IDTU officer's activity log, and photographs taken at the scene by the arresting officer. The items at issue are neither obscure nor difficult to obtain; rather, they are core items of discovery routinely produced in DWI cases in Bronx County.
IDTU footage "is perhaps one of the most significant pieces of discovery in a V.T.L. § 1192 prosecution" (People v Maldonado, 2025 NY Slip Op 51049(U) [Crim Ct, Bronx County 2025]). Cameras in the IDTU room record a DWI arrestee's interactions with law enforcement personnel at the precinct, including the administration or refusal of chemical tests and field sobriety tests, as well as any statements made by the accused in response to a scripted set of questions. The events recorded in IDTU videos are so crucial to a DWI prosecution that they are frequently recorded from multiple angles. IDTU video is "a critical piece of evidence about an essential element of driving while intoxicated—namely whether the person was intoxicated" (People v Vargas, 171 NYS 3d 877, 881 [Crim Ct, Bronx County 2022]).
The People contend the IDTU videos were "inadvertently not disclosed" and that they thought "all BWC footage was shared" (People's Opposition at 10). The People's explanation for the inadvertent omission is opaque, however, as they assert that "[t]he reason said footage was not shared was that the IDTU footage had generated via the arrest number and did not properly share to defense counsel" (id. at 11). The People's explanation does not shed much light on the reason for the discovery lapse, as the Court cannot ascertain the connection between the omission of the IDTU footage and the IDTU video files having been "generated via the arrest number." While technical glitches will occur, the People's explanation for the error does not persuade the Court that they exercised due diligence to obtain and share this key item of evidence prior to the COC's filing. To the contrary, the People's explanation raises concerns of potential systemic issues interfering with the sharing of IDTU materials, particularly as the IDTU officer's log was also overlooked, and as this is not the first time this Court has encountered the omission of IDTU footage when standard BWC footage is disclosed (People v McLeod, CR-026158-24BX, Crim Ct, Bronx County, June 16, 2025).
Further, although the People received discovery from the NYPD on February 6, 2025, they did not disclose this discovery and file their COC until February 24, 2025. Had the People shared discovery in their possession prior to the eleventh hour, time could have remained to address errors before the expiration of the speedy trial clock. Ultimately, the IDTU videos are a critical piece of evidence, and "the failure to turn [them] over constitutes a glaring omission in the COC" (People v Maldonado, 2025 NY Slip Op 51049(U) [Crim Ct, Bronx County 2025]).
Regarding the still outstanding photographs, this Court has previously rejected the argument that photographs taken at the scene are duplicative of body-worn camera footage (People v Rodriguez, 86 Misc 3d 1217(A) [Crim Ct, Bronx County 2025] ["That some of the photographs' subject matter also appears on body worn camera footage does not absolve the people of their obligation to disclose the photographs themselves."]). C.P.L. § 245.20[1][h] requires the People to disclose "all photographs. . .made or completed by a public servant engaged in law enforcement activity" when those photographs relate to the subject matter of the case; no caveat exists for photographs whose subject matter may also be depicted in other discoverable items. Finally, under Article 245, it is not for the People to determine what discoverable items may or may not be duplicative of others (See People v Williams, 72 Misc 3d 1214(A) [Crim Ct, New York County 2021] ["C.P.L. Article 245 relieves the People of having [*5]to define what is or is not discoverable. The list of what types of evidence must be disclosed was determined by the Legislature."]; see also People v Pena-Hernandez, 84 Misc 3d 1247(A) [Crim Ct, Bronx County 2024] ["duplicity is not a factor to be considered under the discovery statute or case law"]).
One of the charges Defendant faces is C.P.L. § 145.00[3], criminal mischief in the fourth degree—an allegation that he "recklessly damage[d]" another's property "in an amount exceeding two hundred fifty dollars." The photos of the damaged vehicles could speak directly to the elements of this charge, yet scant effort was made to obtain them prior to filing the COC. The People e-mailed the arresting officer requesting these photographs on January 27, 2025; however, no follow-up efforts were made until March 7, 2025, after the COC had been filed. One e-mail attempt to obtain these photographs does not demonstrate the People's due diligence to satisfy their discovery obligations prior to filing the COC. While the People contend that the photographs may no longer exist, they acknowledge that they have yet to receive information about the photographs from the arresting officer. Thus, the People have not established that the photographs are lost or unavailable pursuant to C.P.L. §245.50[1].
B. Due Diligence under Bay
The People have not carried their burden to establish that they exercised due diligence and made reasonable inquires to comply with their discovery obligations prior to the COC's filing (People v Bay, 41 NY3d 200, 213 [2023]). Instead, the record and timeline reflect a last-minute attempt to toll the speedy trial clock with a faulty certificate of compliance, with subsequent attempts to cure deficiencies that should have been addressed beforehand. Here, the People's first attempt to obtain discovery from the NYPD was made on December 30, 2025—after the People should have shared automatic discovery pursuant to C.P.L. §245.10[a][ii]. The People's subsequent attempts to obtain discovery prior to the COC's filing included three follow-up e-mails to a liaison at the precinct, and one e-mail to the arresting officer. No discovery was shared with the defense until after business hours on the 90th chargeable day.
Although the majority of discoverable material was disclosed prior to the COC's filing, substantive, routinely shared items remained outstanding when the People certified their discovery compliance—crucial items whose omission should have been obvious to a prosecutor exercising due diligence. The discovery disclosed in the instant case was neither particularly voluminous nor complex. Although the prosecution has subsequently shared three of the four outstanding items, these items were disclosed only after defense counsel alerted the prosecution to their omission on multiple occasions. Finally, the photographs taken at the scene remain outstanding.
Accordingly, the Court finds that the certificate of compliance filed on February 24, 2025, was invalid. As such, the accompanying statement of readiness was illusory. (See CPL § 245.50(3); People v. Guzman, 75 Misc 3d 132(A) [2d Dept 2022]; People v. Pierna, 74 Misc 3d 1072 [Crim Ct, Bronx Co. 2022].)
THE CPL § 30.30 CALCULATION
The first day counted for speedy-trial purposes is November 25, 2024, the day following [*6]the commencement of the criminal action (People v Stiles, 70 NY2d 765, 767 [1987]). The prosecution filed and served a COC on February 24, 2025. However, as discussed supra, the COC was invalid and failed to toll the speedy trial clock. The prosecution served additional discovery and filed a supplemental certificate of compliance on March 10, 2025, after the instant motion schedule was set on March 7, 2025. Consequently, the speedy trial clock was first tolled when the instant motion schedule was set (November 25, 2024 — March 7, 2025 = 101 days charged). Accordingly, 101 days are chargeable to the People, and their ninety-day speedy trial period has elapsed.
CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is GRANTED.
This constitutes the opinion, decision, and the order of the Court.
Dated: July 18, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:Defendant also moves for multiple pre-trial hearings. As the Court's decision on Defendant's motion to dismiss pursuant to C.P.L. §§ 245.[4][c], 30.30[1][b], and 170.30[1][e] is dispositive, the remaining pre-trial issues are moot.

Footnote 2:C.P.L. § 245.10[1][a] allows the prosecution an additional thirty calendar days to disclose automatic discovery when the discoverable materials are "exceptionally voluminous," or when the discoverable materials are not in the actual possession of the prosecution, "despite diligent, good faith efforts."

Footnote 3:Here, the 90th calendar day fell on a Saturday, February 22, 2025, making Monday, February 24, 2025, the 90th chargeable day (General Construction Law § 25-a[1]; People v Powell, 179 Misc 2d 1047, 1048, [App Term, 2nd Dept 1999], lv denied 93 NY2d 928 [1999]; People v. Mandela, 142 AD3d 81, 85 [3rd Dept 2016]).

Footnote 4:After a review of the court file, the Court takes judicial notice that the supporting deposition, certificate of compliance, and statement of readiness were filed via EDDS at 10:59 p.m. on February 24, 2025, although the documents may have been served on Defendant at 11:03 p.m. the same night.

Footnote 5:This Court has previously held that the People may not be deemed ready for trial when the supporting deposition is first filed after business hours on the 90th chargeable day, as it is impossible to arraign the defendant on the information prior to the expiration of the speedy trial clock (People v Armstrong, 85 Misc 3d 1259(A [Crim Ct, Bronx County 2025], citing People v Englund, 84 NY2d 1 [1994] and People v. Goss, (87 NY2d 792 [1996]).

Footnote 6:The Court also notes that, although the People's e-mails with the precinct liaison request multiple specific items of discovery, the accident report is not listed. Moreover, the People's e-mails with the precinct liaison request activity logs for all members of service on a list that does not include IDTU Officer Acosta (People's Opposition Exhibit 2).