People v DeJesus (2025 NY Slip Op 51345(U))

[*1]

People v DeJesus

2025 NY Slip Op 51345(U)

Decided on August 28, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 28, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Jaylynn DeJesus, Defendant.

Docket No. CR-001681-25BX

For the Defendant: The Legal Aid Society 
(by: Addison Jeske, Esq.)
For the People: Darcel D. Clark, District Attorney, Bronx County
(by: ADA Erin Cauley)

Deidra R. Moore, J.

On February 5, 2025, Jaylynn DeJesus (hereinafter referred to as "Defendant"), appeared in Bronx County Criminal Court in response to a desk appearance ticket. Defendant was arraigned on charges of Penal Law ("P.L.") § 120.00[1], assault in the third degree, and P.L. § 240.26[1], harassment in the second degree.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30[1][b] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution did not exercise due diligence and make reasonable inquiries and efforts to ascertain the existence of and disclose all discoverable materials prior to filing the certificate of compliance. Defendant's motion to dismiss pursuant to C.P.L. §§ 245.50[3] and 30.30 is GRANTED.
RELEVANT FACTUAL AND PROCEDURAL
BACKGROUND
On February 5, 2025, the Defendant was arraigned on a top charge of P.L. § 120.00[1], assault in the third degree, a class A misdemeanor. The charges stemmed from an altercation which had occurred on January 16, 2025; on that date, Defendant was arrested and released with a desk appearance ticket. The complaining witness was also detained and issued a summons for P.L. § 240.20, disorderly conduct, a violation.
At Defendant's arraignment on February 5, 2025, a supporting deposition was filed and served, and the complaint was deemed an information. Defendant was released on his own recognizance, and the case was adjourned to March 20, 2025, for discovery compliance.
On March 20, 2025, the prosecution had not served discovery on the defense. The case was adjourned, again for discovery compliance, to May 8, 2025. On May 5, 2025, the prosecution filed and served, off-calendar, an automatic disclosure form ("ADF"), a certificate of [*2]compliance ("COC"), and a statement of readiness ("SOR").
On May 7, 2025, defense counsel sent the assigned prosecutor an e-mail with a list of discoverable items that he contended remained outstanding.
On May 8, 2025, the parties appeared before this Court for a discovery conference, at which time a motion schedule was set.
Following the setting of the motion schedule, the assigned prosecutor served additional discovery and filed a supplemental certificate of compliance ("SCOC") on May 9, 2025. On May 19, 2025, defense counsel sent another e-mail to the assigned prosecutor regarding outstanding discovery, some of which had been flagged in the prior e-mail, and some of which had not. On May 29, 2025, the prosecution served additional discovery.
By motion dated June 6, 2025, Defendant moved to invalidate the certificate of compliance and dismiss the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e], alleging that the prosecution was not ready for trial within the statutorily allotted ninety-day period. The People filed their opposition on July 15, 2025, contemporaneous with a second supplemental certificate of compliance addressing the discovery served on May 29, 2025. Defendant filed his reply on July 28, 2025.
LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where, as here, the top count charged is a class A misdemeanor (C.P.L. § 30.30[1][b] and P.L. § 120.00[1]).
The speedy trial clock is statutorily bound to the prosecution's discovery obligations under C.P.L. Article 245 (C.P.L. §§ 245.50[3] and 30.30[5]). Before the People may be deemed ready for trial — thus tolling the speedy trial clock — they must disclose "material and information" in their possession from a non-exhaustive list of twenty-one enumerated categories (C.P.L. § 245.20[1]). Discoverable items possessed by "any New York state or local police or law enforcement agency" are deemed to be in the prosecution's possession (C.P.L. § 245.20[2]). Where material otherwise discoverable under C.P.L. § 245.20[1] exists but is not in the prosecution's custody or control, the People are nonetheless required to "make a diligent, good faith effort to ascertain the existence of [this material]" and make it available to the defense (CP.L. § 245.20[2]). The People are not required, however, to obtain by subpoena duces tecum material or information which the defense may obtain in this manner (C.P.L. § 245.20[2]).
After the People have fulfilled their discovery obligations, they must file with the court and serve on the defense a certificate of compliance, certifying that they have exercised due diligence and made reasonable inquires and efforts to obtain and disclose all material subject to discovery under C.P.L. § 245.20[1] (C.P.L. § 245.50[1]). Absent "an individualized finding of special circumstances," the People "shall not be deemed ready for trial" until they have filed a valid certificate of compliance (C.P.L. § 245.50[3]).
A COC's validity turns on whether the People exercised due diligence to comply with their discovery obligations prior to the COC's filing, and it is the People's burden to demonstrate that they acted with such diligence (People v Bay, 41 NY3d 200 [2023]). C.P.L. Article 245 provides instruction for courts assessing due diligence in the discovery context. C.P.L. § 245.50[5] directs courts to examine "the totality of the party's efforts to comply with the provisions of this article, rather than [to] assess the party's efforts item by item." C.P.L. § 245.50[5][a] enumerates those factors relevant to a diligence assessment, instructing courts to consider, among other factors:
1. the efforts made by the prosecutor to comply with the requirements of Article 245,
2. the volume of discovery provided and the volume of discovery outstanding,
3. the complexity of the case,
4. whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed,
5. the explanation for any alleged discovery lapse,
6. the prosecutor's response when apprised of any allegedly missing discovery,
7. whether the belated discovery was substantively duplicative, insignificant, or easily remedied,
8. whether the omission was corrected,
9. whether the prosecution self-reported the error and took prompt remedial action without court intervention, and
10. whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.
Finally, C.P.L. § 245.50[5][b] advises that no one factor is determinative in a diligence analysis, as the determination must be based on a consideration of all the listed factors.
DISCUSSION
I. The Parties' Arguments
A. The Disputed Items
The defense moves to invalidate the COC based on multiple disputed items, some of which Defendant contends were belatedly turned over, and some of which have not yet been disclosed.
The defense avers that the People belatedly disclosed the "ZOLPA" report and the Defendant's Entity Report (C.P.L. § 245.20[1][e]), as well as the worksheet for the summons issued to the complaining witness as a result of the incident which led to Defendant's arrest (C.P.L. §§ 245.20[1][e] and 245.20[1][k]). The defense further contends that the prosecution has yet to disclose the Pre-Arraignment Notification Card (C.P.L. § 245.20[1][e]); the complainant's Entity Report and any additional paperwork stemming from the complainant's detention and resulting summons (C.P.L. §§ 245.20[1][e] and 245.20[1][k]); the Central Personnel Indexes ("CPIs") for testifying officers (C.P.L. § 245.20[1][k]); and photographs taken by an officer at the scene depicting the complainant's alleged injuries (C.P.L. § 245.20[1][h]).
B. The Defendant's Argument
The defense argues that the COC is invalid because the prosecution did not exercise due diligence prior to the COC's filing. The defense notes that the People did not provide the ZOLPA or the Defendant's Entity Report until after notification by defense counsel that these two items were missing from the shared discovery. The defense emphasizes that these are routine police reports generated in most, if not all, arrests — reports that defense counsel has received as part of discovery in other cases. The Defendant further notes that the People have yet to disclose the complaining witness's Entity Report, as well as photographs of the complainant's alleged injuries taken by an officer at the scene.
Most crucially, the People did not provide material related to a summons which the complainant received following the incident which gave rise to Defendant's arrest. Defense counsel observed on body-worn camera ("BWC") footage that both the Defendant and the complainant were handcuffed and transported to the 44th Precinct (Defense Motion at 14). [*3]However, when defense counsel contacted the assigned prosecutor requesting any information about the complainant's detention, the People responded that because the complainant had not been arrested, no discoverable paperwork was generated. In response, defense counsel called the 44th Precinct and was informed that the complainant was issued a summons. Defense counsel obtained the summons number and provided it to the assigned prosecutor, who ultimately obtained and disclosed the summons. Defense counsel subsequently inquired whether additional paperwork was generated by the complainant's detention. The People responded that no such paperwork exists, although an officer can be seen on BWC footage filling out a "Prisoner Pedigree Card" bearing the complainant's name.
C. The People's Argument
The People argue that they exercised due diligence prior to the COC's filing, first making a general discovery request to the 44th Precinct on February 20, 2025. The assigned prosecutor requested, in addition to specifically listed items, "ANY AND ALL other evidence. . . that was generated or related to this arrest that was not included in the original arrest packet provided to the Bronx District Attorney's Office" (People's Opposition Exhibit 2). The People sent a follow up e-mail on March 20, 2025, and received discovery from the 44th Precinct on March 27, 2025 (People's Opposition at 10).
The People contend that Entity Reports are not discoverable because they are akin to RAP sheets, which the defense routinely receives at arraignment, and because they are "not within the People's custody or control"; the People further aver that any Entity Reports that defense counsel may have received in the past were "likely disclosed as a courtesy" (People's Opposition at 10). With regard to the ZOLPA, the People affirm that they were unaware that the ZOLPA was outstanding, as they did not know what a ZOLPA looked like until defense counsel notified them that this report was missing. The People further contend that the ZOLPA contains information which is duplicative of information contained within multiple other discoverable items.
While the People concede that the outstanding photographs are discoverable, they contend that the photos are duplicative of what can be seen on the BWC footage of the officer who took them.[FN1]
The People explain the reason for the discovery lapse: based on communications with the arresting officer and the precinct discovery liaison, the assigned prosecutor believed that no photos existed. The People's first discovery e-mail, sent to the discovery liaison and the arresting officer, requested "any arrest color photos pertaining to this case." After the People received no response, they followed up on March 20, 2025. The precinct responded to the e-mail, cc'ing the arresting officer and stating, "A/O MUST FORWARD IF IT EXIST." When the People received no response from the arresting officer, they "assumed that the photos did not exist" (People's Opposition at 13). The People contend that their efforts to obtain the photographs were diligent, as they made two e-mail requests for discovery prior to the COC's filing, and have since sent three texts specifically requesting the photographs, one to the arresting officer, and two to the officer who took the photos.
Finally, the People contend that they acted with due diligence to obtain the summons after defense counsel alerted them of the issue on May 19, 2025. The People called the 44th [*4]Precinct on the morning of May 20, 2025, and were informed by a desk sergeant who ran the complainant's New York State Identification Number ("NYSID") that "nothing was coming up" to indicate that the complainant had been arrested or received a summons in connection with the altercation for which Defendant was arrested. When defense counsel reached out again and provided the People with the summons number, the prosecution inquired again and ultimately obtained the summons worksheet, providing it to defense counsel on May 29, 2025.
II. The Court's Analysis
A. Discoverability of Contested Items
i. ZOLPA
The prosecution argues that the ZOLPA is not discoverable because it does not relate to the subject matter of the case. The ZOLPA is generated from the NYPD Online Prisoner Arraignment Database, which tracks the progress of a case between arrest and arraignment. The ZOLPA contains the name of the arresting officer and the top arrest charge, information about whether an arrestee was held at central booking or released with a desk appearance ticket, as well as the specific times that events between arrest and arraignment took place, including the time that arrest paperwork was generated and the time this paperwork was given to the District Attorney. The ZOLPA may also contain notes entered by the arresting officer. Consequently, the Court finds that this document is discoverable pursuant to C.P.L. § 245.20[1][e] (See People v. JMW, 2024 NY Slip Op 51249(U) [Crim Ct, Kings County] ["Inasmuch as the Prisoner Arraignment Database documents the names of the officers that participated in the defendant's arrest processing, contains notes entered by these officers about the defendant, and documents information such as how long the defendant was in custody and where he was lodged prior to arraignment, this item is automatically discoverable."]).
ii. Entity Reports
The People also contend that the Defendant's Entity Report is not discoverable, both because it is similar to the Defendant's RAP sheet,[FN2]
which is provided to the defense at arraignments, and because it is not within the People's possession. The Court rejects both of the People's arguments.
An Entity Report is a document generated from the NYPD's Domain Awareness System ("DAS"). The DAS is a "database that centralizes vital information that would otherwise be kept throughout different isolated data compartments within NYPD computer systems"; consequently, reports from this system present a comprehensive overview of the NYPD's knowledge about a particular person, including "real-time 911 information, past history of call locations, crime complaint reports, arrest reports, summonses, NYPD arrest and warrant history, as well as a person's possible associated vehicles, addresses, persons, phone numbers, date of birth, and firearm licensure history" (People v Robert K, 2024 NYLJ LEXIS 2228, *7-8 [Crim Ct, New York County], internal quotations omitted).
The comprehensive array of information contained within an Entity Report distinguishes this report from a RAP sheet, which contains only the subject's biographical information and past criminal history as a defendant, including past convictions and sentences. Moreover, the People's [*5]assertion that the Entity Report is not within the People's possession or control is plainly incorrect, as C.P.L. § 245.20[2] provides that all material possessed by "any New York state or local police or law enforcement agency" shall be deemed to be in the prosecution's possession.
Defendant's Entity Report was clearly generated in connection with his arrest; the document bears a banner indicating that it was generated by Officer Sanchez Acosta at the time of the defendant's arrest, 21:46 on January 16, 2025 (Defense Motion Exhibit J). (See People v Robert K, 2024 NYLJ LEXIS 2228, *7-8 [Crim Ct, New York County] ["Insofar as the NYPD generated this report and included it in the defendant's arrest packet, it formed part of the police investigation and, as such, is clearly related to the subject matter of the case."]). Consequently, this item should have been disclosed prior to the COC's filing, as it is automatically discoverable pursuant to C.P.L. § 245.20[1][e].
If an Entity Report was generated for the complainant in connection to Defendant's arrest, this item should also have been disclosed. It remains unclear whether such a report was created for the complainant, as the People note that they "are unaware of whether any officers ran a check for [the complainant's] Entity Report," further noting that the People did not request this document from the precinct, as they believed the item not to be discoverable.
iii. Central Personnel Index Sheets
Regarding the Central Personnel Index sheets, the Court agrees with the People that these indexes are not automatically discoverable when they do not contain substantiated or unsubstantiated complaints against a testifying officer. Here, the assigned prosecutor affirms that she has reviewed the CPIs for both testifying officers, and they contain no substantiated or unsubstantiated complaints. Multiple courts have held that exonerated and unfounded complaints are not automatically discoverable as potential impeachment material (see People v Soto, 193 NYS3d 677 [Crim Ct, New York County 2023] ["In the context of CPL 245.20(1)(k)(iv), courts have typically ruled that allegations investigated by the IAB and CCRB deemed substantiated or unsubstantiated, or cases that are pending, must be disclosed, whereas, exonerated and unfounded allegations may not be."]; see also People v Barralaga, 153 NYS3d 808 [Crim Ct, New York County 2021]; People v Montgomery, 159 NYS3d 655 [Sup Ct, New York County 2022], People v Castellanos, 148 NYS3d 652 [Sup Ct, Bronx County 2021]). Thus, the People have fulfilled their discovery obligations with respect to the CPIs.
iv. Photographs of Complainant Injuries
Though the People concede that the photographs taken at the scene are automatically discoverable under C.P.L. § 245.20[1][h], they counter that the contents of the photographs are duplicative of what can be observed in body-worn camera footage. This Court has previously rejected the argument that photographs whose subject matter is depicted in BWC footage are duplicative of the footage itself (People v Vergara, 2025 NY Slip Op 51120(U) [Crim Ct, Bronx County]). To their credit, the People provide screenshots of the relevant BWC footage for the Court's review. Ultimately, however, a review of the screenshots reveals precisely why the footage is no substitute for the photographs themselves. It is apparent that the photographs were taken at closer proximity and from an angle level with the complainant's face, the site of the alleged injuries. Because the injuries in question are on the complainant's forehead, the lower angle of the body-worn camera, along with glare from overhead lighting, inhibit the ability to ascertain much detail. As the complainant alleged that he suffered bruising, swelling, and a scratch as a result of the altercation, the photographs speak directly to a material issue in the case.
B. Exculpatory and Impeaching Information — The Complainant's Summons and Possible Accompanying Paperwork
Perhaps the most significant item of discovery in this case, the worksheet for the C-summons issued to the complainant at the time of Defendant's arrest, was not disclosed prior to the COC's filing. Moreover, it was defense counsel's efforts that yielded the item: defense counsel called the precinct, spoke with an officer who confirmed that the complainant had been issued a summons, and provided the summons number directly to the assigned prosecutor. Defense counsel believed that the complainant had been issued a summons based on his review of BWC footage provided by the People, which depicted both the Defendant and the complainant being placed in handcuffs and brought by officers to the 44th Precinct (Defense Motion at 14).
The complainant's C-summons worksheet was filled out by Officer Harrylall, who arrested Defendant and whom the People designate as a testifying witness on their automatic disclosure form. The C-summons worksheet indicates that the complainant was issued a summons for P.L. § 240.20, disorderly conduct, at 20:45 on January 16, 2025, and that the complainant was instructed to appear in court on February 4, 2025 (Defense Motion Exhibit H). The summons worksheet also contains factual allegations against the complainant, stating: "At T/P/O, [complainant] was on public train acting in a violent and threatening manner causing a crowd to gather." The contents of the worksheet, especially the factual allegations characterizing the complainant's behavior as "violent and threatening," is information which must be automatically disclosed pursuant to C.P.L. § 245.20[1][k]. This information tends to negate or mitigate the Defendant's guilt, supports a potential justification defense, and could be used to impeach the complainant's credibility; it is difficult to think of information more crucial to Defendant's ability to assess the strength of his case and prepare for trial. Nonetheless, as the People were unaware of the summons when the COC was filed, they certified in their accompanying automatic disclosure form that they were unaware of any exculpatory or impeaching information.
Even after becoming aware of the summons, the People failed to make sufficient inquiries into the possible existence of other accompanying paperwork. The prosecution notes that they sent a text to Officer Harrylall on May 29, 2025, stating, "I just wanted to make sure there was no other paperwork generated in relation to that summons" (People's Opposition Exhibit 10). Officer Harrylall responded the same day that "no other paperwork was generated for that summons" (id.). When the prosecution informed defense counsel that no additional paperwork existed, defense counsel countered that Officer Rodriguez could be seen on BWC footage filling out a Prisoner Pedigree Card for the complainant at the precinct. The assigned prosecutor responded, "I texted the AO yesterday and he said no other paperwork was generated for that summons besides the summons form that I turned over. I believe if it was created it no longer exists" (Defense Motion Exhibit C). The prosecution did not communicate the existence of the Prisoner Pedigree Card to the discovery liaison, the arresting officer, or the officer who was depicted on BWC footage filling out paperwork for the complainant, leaving doubt as to whether additional paperwork related to the complainant's detention may remain outstanding. Further, as the complainant's appearance date for the summons — February 4, 2025 — had passed, the People should have inquired into the status or outcome of the case against the complainant and disclosed this information to the defense.
C. Due Diligence Under Article 245.50[1] and People v Bay
An evaluation of the first factor under C.P.L. § 250[5][a], the People's efforts to comply with their discovery obligations under C.P.L. Article 245, weighs against a finding that the People exercised due diligence. C.P.L. § 245.10[1][a][ii] requires automatically discoverable items to be shared with the defense within thirty-five days after arraignment when the Defendant is not in custody.[FN3]
Here, the prosecution received discovery from the precinct on March 27, 2025, but did not share discovery with the defense until May 5, 2025, the eighty-ninth chargeable day in the case. Moreover, the prosecution details minimal effort to ensure all discoverable material was gathered and disclosed prior to the COC's filing: the prosecution affirms that an initial discovery request was e-mailed to the precinct and cc'd to the arresting officer, followed by another email to the same parties a month later. Further efforts to obtain discovery occurred only after the COC's filing and at defense counsel's prodding.
The People note that they requested "any arrest color photos" in their initial discovery e-mail to the precinct liaison and arresting officer. Assuming the e-mail's recipients understood this request to refer to the photos of the complainant's injuries, it was not reasonable for the People to conclude, based solely on a lack of response about the photos, that no photos existed — particularly since BWC footage clearly depicted an officer at the scene taking the photos.
As with the photos of the complainant's injuries, the People affirm that they were unaware of the existence of the summons issued to the complainant; however, BWC footage in the People's possession depicted the complainant being handcuffed and detained at the precinct while an officer filled out paperwork bearing the complainant's name. Moreover, the summons worksheet itself was filled out by Officer Harrylall, who arrested the Defendant. Based on the People's lack of awareness of these items, it is not apparent that they reviewed their body-worn camera footage or spoke to their witnesses prior to certifying discovery compliance and trial readiness. Due diligence in the discovery context necessitates that the People review their own discovery for completeness and accuracy (People v Martinez, 229 NYS 3d 329, 332 [Sup Ct, Kings County 2025] ["[r]eview of the evidence for completeness is a reasonable step in the People's inquiry to determine if additional discovery exists"]; People v Edwards, 178 NYS3d 694, [Crim Ct, Bronx County 2022] [The People did not demonstrate due diligence where they "fail[ed] to actually review the evidence that was disclosed or to speak directly with the officers involved in th[e] case"]).
The prosecution provided a multitude of discovery items prior to the COC's filing, and the number of belatedly disclosed or outstanding items is comparably small. The Court also credits the People with promptly providing the ZOLPA and Defendant's Entity Report after defense counsel's request. However, the photographs of the complainant's alleged injuries remain outstanding, and perhaps the most important piece of discovery, the C-summons worksheet characterizing the complainant's behavior at the time of the altercation as "violent and threatening," had not been disclosed. Additionally, the People did not make sufficient inquiry into the possible existence of other paperwork generated at the time of complainant's detention, or the status of the case against the complainant.
Because the People did not exercise due diligence to comply with their discovery [*6]obligations, the certificate of compliance, filed May 5, 2025, was invalid and failed to toll the speedy trial clock.
THE CPL § 30.30 CALCULATION
The criminal action commenced with the Defendant's appearance on the desk appearance ticket; however, the first day counted for speedy trial purposes is the day after the commencement of the criminal action, February 6, 2025 (People v Morrison, 231 NYS 3d 922 [Crim Ct, Bronx County 2025]). The prosecution filed and served the COC on May 5, 2025. As discussed supra, the certificate of compliance was invalid and failed to toll the speedy trial clock. Consequently, the speedy trial clock was first tolled when the instant motion schedule was set on May 8, 2025 (February 6, 2024 — May 8, 2025 = 92 days charged).
Ninety-two days are chargeable to the People, and their statutorily allotted speedy trial time has elapsed.
CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is GRANTED.
This constitutes the opinion, decision, and the order of the Court.
Dated: August 28, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:Both defense counsel and the People provide screenshots of the camera footage for the court's review, showing the moments when Officer Sanchez Acosta took the photographs.

Footnote 2:"RAP" stands for record of arrest and prosecution (see New York State Unified Court System, Criminal Records Basics at https://www.nycourts.gov/courthelp/criminal/recordsBasics.shtml, last visited August 27, 2025).

Footnote 3:C.P.L. 245.10[1][a] grants the People an additional thirty calendar days, without need for motion, when "discoverable materials. . . are exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution."