People v Yung (2025 NY Slip Op 51859(U))

[*1]

People v Yung

2025 NY Slip Op 51859(U)

Decided on November 24, 2025

Criminal Court Of The City Of New York, New York County

Brown, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 24, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York,

against
Sophia Yung, Defendant.

Docket No. CR-017898-25NY

Kristen Brown, The Legal Aid Society
Assistant District Attorney Anjali Puri, New York County District Attorney's Office

Marva C. Brown, J.

Sophia Yung, hereinafter "defendant," is charged with Aggravated Harassment in the Second Degree (PL 240.30[1][a]), and various related charges. By Notice of Motion to Dismiss, dated September 23, 2025, the defense challenges the validity of the People's Certificate of Compliance (COC) and seeks dismissal pursuant to CPL 30.30. The defense also moves to dismiss for facial sufficiency. The People oppose by motion filed on October 28, 2025, and the defendant submitted a reply on November 5, 2025.
Upon review of the submissions, the Court file and relevant legal authority, the defendant's motion to dismiss for facial insufficiency is DENIED. However, this court finds that the People's COC is INVALID, and thus, the People's Statement of Readiness (SOR) is ILLUSORY. As there are 93 days chargeable to the People, Defendant's motion to dismiss the accusatory instrument is hereby GRANTED.
I. FACIAL SUFFICIENCY
The defense argues that the accusatory instrument is facially insufficient because it contains unconverted hearsay. On July 16, 2025, the People served and filed a superseding accusatory instrument (SSI). The SSI is sworn to by an individual by the name of Benjamin Kafka, and Benjamin Kafka signed and dated the SSI under the penalty of perjury. However, the factual portion of the SSI begins, "I am informed by Benjamin Kafka", and this language appears throughout the SSI. The defense argues that absent an attached supporting deposition from Benjamin Kafka, this language remains unconverted hearsay. Even if true, the Court of Appeals has held that hearsay pleading defects in the factual portion of an accusatory instrument can be waived if not timely raised (People v Casey, 95 NY2d 354, 367 [2000]). Here, the defendant was arraigned on the SSI on July 16, 2025. The defense did not raise any objection to this accusatory instrument until they filed the instant motion on September 23, 2025, well beyond 45 days from the defendant's arraignment on the SSI (see CPL §§ 255.20[1]; 255.20[3]). Therefore, the defendant's motion is denied as untimely. However, even if it were timely, this court would find that the factual allegations here are facially sufficient and give the defendant "sufficient notice to prepare a defense and are adequately detailed to prevent a defendant from being tried twice for the same offense" (Casey, 95 NY2d at 360; see People v Argon, 28 NY3d 125, 128 [2016]; People v Konieczny, 2 NY3d 569, 576 [2004]; People v Smalls, 26 NY3d 1064 [*2][2015]; People v Kalin, 12 NY3d 225, 230 [2009]).
Therefore, the defense's motion to dismiss for facial sufficiency is DENIED.

II. VALIDITY OF THE PEOPLE'S CERTIFICATE OF COMPLIANCE
Under CPL 245.20(1), "the prosecution shall disclose to the defendant, and permit the defendant to discover, inspect, copy, photograph and test," all items listed in CPL 245.20(1)(a)-(v) that are "in the possession, custody and control of the prosecution or persons under the prosecution's direction or control". In May of 2025, the Legislature added CPL 245.20(1)(v), which now requires the prosecution to disclose "[a]ny other material and information relevant to the subject matter of the charges against the defendant in the instant case or a defense thereto". "[A]ll items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution" (CPL 245.20[2]; see also CPL 245.55[1] [prosecution must "ensure that a flow of information is maintained between the police and other investigative personnel and his or her office"]). Further, where material or information discoverable under CPL 240.20(1) exists but is not within the prosecutor's possession, custody or control, the prosecutor shall make "a diligent, good faith effort" to ascertain the existence such material to be made available for discovery (CPL 245.20[2]). However, "[t]he prosecutor shall not be required to obtain material or information if it may be obtained with use of a subpoena duces tecum where the defense is able to obtain the same material with the use of a subpoena duces tecum" (id.).
Pursuant to CPL 245.50(1), when the prosecution has exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide all required discovery, it shall serve upon the defendant and file with the court a certificate of compliance (COC). Any COC shall state that, "after exercising due diligence and making reasonable inquiries and efforts to ascertain the existence of, obtain, and disclose material and information subject to discovery, the prosecution has disclosed and made available all known material and information it has obtained subject to discovery." The COC must also identify the items provided, along with items "that the prosecution is required to disclose and of which the prosecution is aware but has been unable to obtain despite the exercise of due diligence (id.). If additional discovery is disclosed after a COC is filed, the prosecution must serve and file a supplemental certificate of compliance (SCOC) detailing "the basis for the delayed disclosure so that the court may determine whether the delayed disclosure impacts the propriety of the certificate of compliance" (CPL 245.50[1-a]). However, the filing of an SCOC shall not impact the validity of the original COC if filed "in good faith and after exercising due diligence", or if the additional discovery did not exist at the time of the original COC's filing (id.).
According to CPL 245.50(5)(a), "[i]n assessing a party's due diligence, the court shall look at the totality of the party's efforts to comply with the provisions of this article, rather than assess the party's efforts item by item" (see also CPL 30.30[5][b]). "Relevant factors for assessing the prosecutor's due diligence include, but are not limited to: the efforts made by the prosecutor to comply with the requirements of this article; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed [*3]disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial" (CPL 245.50[5][a]; see also CPL 30.30[5][b]). "The court's determination shall be based on consideration of all factors listed in [CPL 245.50(5)(a)] and no one factor shall be determinative" (CPL 245.50[5][b]). "A court shall not invalidate a certificate of compliance where the party has exercised due diligence and acted in good faith in making reasonable inquiries and efforts to obtain and provide the material required to be disclosed" (CPL 245.50[6]).
The defense argues that the People's COC was invalid for their belated disclosure of the body-worn camera (BWC) of the complainant's walk-in complaint interview with police, as well as underlying police misconduct records, including records pertaining to substantiated allegations of the People's one testifying police witness. The defense also argues that the People have yet to disclose the discovery relating to the defendant's seizure in Kings County. In this case, the defendant was arrested in Brooklyn on an unrelated matter, but following her arraignment in Brooklyn, she was held and transported to Manhattan due to an active I-Card. The defense argues that the materials relating to the defendant's initial seizure in Brooklyn, such as body-worn camera depicting her arrest and the arrest paperwork, relate to the Wade/Dunaway hearing for this case. The defense first requested these materials on September 2, 2025, and these materials remain outstanding. The People argue that these materials do not relate to the subject matter of the instant case, and are therefore, not automatically discoverable. This court will now consider CPL 245.50(5)(a)'s relevant factors to assess the People's due diligence for this case.
1. The Peoples' Efforts to Comply with Article 245's Requirements
First, with respect to the efforts made by the prosecutor to comply with the requirements of this article, it's important to note that the People here failed to comply with the required statutory timeframes outlined in Article 245. CPL 245.10(1)(a) requires the People to perform their initial discovery obligations on a case "as soon as practicable" but within twenty days after arraignment for incarcerated defendants, and, within thirty-five calendar days after arraignment for all others. Here, the People did not turn over any NYPD arrest paperwork until August 5, 2025, 63 days from the defendant's arraignment. The majority of the police paperwork, including disciplinary records for the People's testifying witnesses and the materials relating to the issuance of the I-Card, which partly led to her apprehension on this case, was not disclosed until August 20, 2025 — 78 days from the defendant's arraignment. This fact alone suggests a lack of due diligence (see People v Stamm, 85 Misc 3d 136[A] [App Term, 2d Dept 9th and 10th Jud Dist 2025] [noting the People's failure to abide by the 35-day rule in attempting to disclose impeachment material and holding "[w]hile there was no impeachment material to turn over, that fact is inconsequential since, in the first instance, the People needed to show due diligence and good faith to submit a proper COC"]; People v Carter, 86 Misc 3d 1248[A] [Crim Ct, Bronx County 2025] ["trial courts largely agree that noncompliance with the § 245.10(1)(a)(ii) deadline can, when relevant, undermine the People's overall diligence"], citing People v Kents, 86 Misc 3d 1206[A] [Crim Ct, Bronx County 2025] [relying in part on Stamm in finding that the People's delayed initial disclosures were relevant to an overall lack of diligence]; People v Mendoza, 86 Misc 3d 1201[A] [Crim Ct, Kings County 2025] [assessing noncompliance with § 245.10(1)(a)(ii) as relevant to the People's diligence]). By failing to adhere to the statutory timeframes outlined in Article 245, the People increased the risk that any inadvertent non-disclosures could be fatal to the validity of their COC. 
The only material turned over prior to August 5, 2025, were the emails that form the basis of the instant allegations, and those were not disclosed until July 21, 2025, 47 days from the defendant's arraignment. While the emails allegedly sent by the defendant were exceptional, the NYPD generated materials for this case were not abnormally voluminous. It is unclear to this court why it took the People over two months to disclose the police paperwork for this case, and the People provide no explanation for this lapse. The People did not indicate reaching out to their Litigation Support Unit (LSU) or the lead detective, Detective Moultry, for assistance in gathering discovery until July 28, 2025, which was nearly two months after the defendant's arraignment. The People give no reason as to why they were unable to disclose the NYPD generated discovery in their actual and constructive possession within 35 days from the defendant's arraignment on this case. It seems like the majority of the People's time in the months following the defendant's arraignment was spent interviewing the complainant and securing the emails from his computer. However, the People put forth very little details about what, if anything, was done to attempt to disclose easily obtainable discovery necessary to defend a case, such as arrest paperwork, BWC, and police disciplinary records. The only discovery request mentioned by the People made during the early days of this case other than the request for the complainants' emails was a June 11th request for 911 calls/Sprint/Radio Run audio from their Central Services Department.[FN1]

As such, this factor weighs heavily against the People. 
2. The Volume of Discovery Provided and the Volume of Discovery Outstanding
The volume of discovery provided seems to outweigh the volume of discovery outstanding and belatedly disclosed. However, as the defense points out, the large portion of this discovery consists of emails obtained through one download from the complainant's computer along with a series of graphs and pie charts created by the People to determine whether this was a hate crime. Therefore, the fact that the volume of discovery disclosed dwarfs the volume of discovery belatedly disclosed or outstanding says little about the People's diligence in this case. 
Further, the items that remain outstanding pertain to the defendant's initial apprehension in Kings County. In this case, the defendant was arrested in Brooklyn on an unrelated matter and then held and transported to Manhattan due to an active I-Card — the I-Card which was issued as a result of the charged allegations. The identification procedure for this case was conducted with the defendant's Brooklyn arrest photo. To date, the People have failed to disclose any of the materials pertaining to the defendant's initial apprehension in Brooklyn. Arguably, that would constitute a large volume of material that remains outstanding, and it is material that is automatically discoverable and relevant to the defendant's seizure on this case (see, e.g., People v Hightower, 176 AD3d 865 [2d Dept 2019] [suppression was warranted where the People failed to present evidence regarding the circumstances of the defendant's unrelated initial arrest which led to his apprehension and arrest based on an active I-Card]). The Peoples' [*4]contentions that "the Kings County arrest was warranted", "the defendant was not illegally arrested", and attenuation would apply even if the arrest were unlawful, are not persuasive. Regardless of their beliefs, it is still the People's burden at a hearing to prove these statements to be true to avoid the suppression of evidence in this case. Therefore, the fact that the entirety of these materials remains outstanding is significant even given the volume of discovery that has already been disclosed.
3. The Complexity of the Case
This is not a complex case. While the allegations concern thousands of emails allegedly sent by the defendant to the complainant, those emails were collected and downloaded by the People's own IT department within Article 245's statutory timeframes.[FN2]
While likely a tedious process for the IT Department, nothing else about this case or the discovery process was complex for the assigned assistant.
4. Whether the People Knew that the Missing Discovery Existed
The People belatedly disclosed the BWC from the complainant's walk-in interview with police. The defense alerted the People to this missing discovery on September 2, 2025, and the People disclosed it on September 17, 2025. The People argue that they did not know about these missing materials. However, the People's lack of knowledge is partly due to the fact that they failed to adequately review the discovery in this case. As the defense points out, the complaint report for this case indicated that BWC footage existed, and the People here turned over no other BWC for this case. With respect to the remaining items, the People are not claiming that they did not know these materials existed, they are simply arguing that the materials are not automatically discoverable. As discussed elsewhere in this decision, this court disagrees. Therefore, this factor weighs against the People.
5. The Explanation for the Any Alleged Discovery Lapse
As stated, the People argue that they either didn't know about the missing discovery, or that the discovery at issue is not automatically discoverable. As all of the items in dispute were automatically discoverable and would have been obvious to a diligent prosecutor, this factor weighs against the People.
6. The People's Response When Apprised of Missing Discovery
Once the defense alerted the People to the missing IAB material and BWC on September 2, 2025, the People disclosed these materials on September 11, 2025, and September 17, 2025, respectively. However, the materials from the underlying arrest in Brooklyn that led to the [*5]apprehension of the defendant on these charges appears to remain outstanding. Without these materials, the defense cannot adequately prepare for a suppression hearing on the instant case. Therefore, this factor weighs against the People.
7. Whether the Discovery was Substantially Duplicative, Insignificant, or Easily Remedied
None of the missing discovery is substantially duplicative of anything already disclosed for this case. The BWC of the complainant's walk-in interview is arguably one of the most important pieces of evidence for this trial. This BWC documents the complainant's statements and behavior when first speaking to the police about this issue and would be crucial to prepare an adequate cross-examination of the complainant. Similarly, the defense cannot prepare for a suppression hearing on this case without the materials from Kings County that show how the defendant came to be in custody. 
With respect to the missing IAB materials, the People have failed to meet their burden to show that these materials were not automatically discoverable. The materials pertained to Detective Moultry, and according to the People's ADF, this is the one police witness they intend to call for this case. This court has routinely held that IAB logs and their underlying attachments for substantiated and unsubstantiated claims of misconduct are automatically discoverable as impeachment material for testifying witnesses, regardless of whether the People feel they are related to the subject matter of the instant case (see, e.g., People v Aron, 85 Misc 3d 1231[A] [Crim Ct, NY County 2025] [People's COC was invalid for their failure to exercise due diligence and make reasonable inquiries with respect to officers' disciplinary records]). This conclusion is based on the plain language of CPL 245(1)(k) along with binding and persuasive appellate precedent on this issue (see CPL 245.20[1][k] [the People must disclose impeachment material for testifying witnesses "irrespective of whether the prosecutor credits the information"]; People v Rodriguez, 77 Misc 3d 23, 25 [App Term, 1st Dept 2022] [Appellate Term invalidated COC where the People failed to turn over underlying impeachment materials without addressing whether said records related to the subject matter], citing Matter of Jayson C., 200 AD3d 447 [1st Dept 2021] [court held that a defendant in a criminal proceeding would be entitled to access to the underlying impeachment records without analyzing whether the records related to the subject matter of the instant case]; People v Coley, 240 AD3d 122 [2d Dept 2025] [the People's automatic discovery obligation under CPL 245.20(1)(k)(iv) is not subject to "an additional layer of analysis" of whether the material is "related to the subject matter of the case"]; People v Luna, 83 Misc 3d 62 [App Term, 2nd Dept, 9th and 10th Jud Dist 2024] [conviction reversed, COC deemed invalid, and case dismissed where the People failed to disclose underlying IAB records for an officer involved in the case]). As this court and many others within this very courthouse have continually stated, to the extent that the People believe these records are not discoverable, they should seek a protective order to obtain a court ruling on these documents' discoverability. The new amendments to Article 245 in no way allow the People to determine what is relevant or may be significant when it comes to disciplinary records, nor are the People now considered the gatekeepers of this evidence.
Therefore, this factor weighs heavily against the People.
8. Whether the Omission was Corrected
While the People corrected some of their errors and reached out to the Kings County District Attorney's Office in September, it appears that they have yet to disclose the underlying materials relating to the defendant's initial apprehension in Kings County. Therefore, this factor weighs against the People.
9. Whether the Prosecution Self-Reported the Error and Took Prompt Remedial Action
The defense had to alert the People to these errors; the People did not self-report them. Therefore, this factor weighs against the People.
10. Whether the Delay or Non-Disclosure Prejudiced the Defense
Here, the delay and omissions here clearly prejudiced the defense and impeded their ability to prepare for trial. As stated above, the missing BWC documented the complainant's statements and behavior when first speaking to the police about this issue and would be crucial to prepare an adequate cross-examination of the complainant. Similarly, the defense cannot prepare for a suppression hearing on this case without the materials from the defendant's Brooklyn arrest (see, e.g., People v Rubio, 2025 WL 2655297, at *4 [Crim Ct, Bronx County 2025] [without the materials related to a hit and run incident which led to the stop of the defendant's vehicle and subsequent arrest on unrelated charges, the defense was inhibited from investigating the potential suppression issues and COC invalid]). Therefore, this factor weighs heavily against the People.
Given the totality of the People's efforts and considering all factors in CPL 245.50(5)(a), this court finds that the People failed to exercise due diligence in complying with their discovery obligations. As such, their COC and subsequent SCOC are INVALID, along with any accompanying statements of readiness.

III. SPEEDY TRIAL
Pursuant to CPL 30.30[1][b], when a defendant is charged with a misdemeanor punishable by a sentence of more than three months, such as in this case, the prosecution must be ready within 90 days from the commencement of that criminal action. To satisfy the initial burden under CPL 30.30, the defendant need allege "only that the prosecution failed to declare readiness within the statutorily prescribed time period" (People v Luperon, 85 NY2d 71, 77-78 (1995); see also People v Goode, 87 NY2d 1045, 1047 [1996]). Once the defendant has alleged that more than the statutorily prescribed time period has elapsed since the commencement of the action, the prosecution bears the burden of establishing sufficient excludable delay (see People v Berkowitz, 50 NY2d 333, 349 [1980]). Absent a valid COC, the People cannot be deemed ready for trial (CPL 245.50[3]).
This case was filed, and the defendant was arraigned on June 3, 2025. The defendant was released, and the case was adjourned to July 16, 2025, for trial. The People concede that this time is chargeable. (43 days charged)
On July 16, the People were not ready, and the case was adjourned to September 4, 2025, for trial. On August 21, 2025, off-calendar, the People served and filed a COC and COR. However, as stated above, the People's COC was invalid and ineffective in stopping the speedy [*6]trial clock. Therefore, this entire adjournment is chargeable to the People. (50 days charged; 93 days total)
The remaining adjournments were either at the request of defense counsel or for motion practice and are excludable. 
As 93 days of chargeable days have accrued for this case, defense counsel's motion to dismiss is GRANTED. The defendants' remaining motions are rendered moot. This constitutes the Decision and Order of this Court.
Dated: November 24, 2025
HON. MARVA C. BROWN, JCC

Footnotes

Footnote 1:The People also state: "Here, analysts from LED group ordered the law enforcement disclosures for Detective Moultry. Then, on May 21, 2025, the assigned ADA engaged the assistance of LSU analysts to obtain discoverable items that, despite diligent efforts, remained outstanding" (P.'s Opp. at p. 13). However, this statement clearly doesn't relate to the instant case and cannot speak to their diligence here, as the defendant was not arraigned on this case until June of 2025.

Footnote 2:"When the discoverable materials, including video footage from body-worn cameras, surveillance cameras, or dashboard cameras, are exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution," the time period may be stayed an additional thirty calendar days without permission from the court (CPL 245.10[1][a]).